UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

Plaintiff,

v.

D-1 Mohmed Ali,
D-2 Majed Mahmoud, and
D-3 Ayob Nasser,

Defendants.

_____/

Case No. 25-CR-20842

Hon. Mark A. Goldsmith

## THE GOVERNMENT'S UNCLASSIFIED MEMORANDUM IN OPPOSITION TO THE DEFENDANTS' MOTIONS TO DISCLOSE AND SUPPRESS FISA MATERIALS

TABLE OF CONTENTS

I.   INTRODUCTION ............................................................................................... 1
     A.   BACKGROUND ...................................................................................... 4
     B.   OVERVIEW OF THE FISA AUTHORITIES......................................... 7
II.  THE FISA PROCESS ...................................................................................... 7
     A.   OVERVIEW OF FISA ............................................................................ 8
     B.   THE FISA APPLICATION.................................................................... 10
          1.   The Certification ........................................................................ 11
          2.   Minimization Procedures........................................................... 12
          3.   Attorney General's Approval..................................................... 13
     C.   THE FISC'S ORDERS ........................................................................... 14
III. THE DISTRICT COURT'S REVIEW OF FISC ORDERS ........................... 19
     A.   THE DISTRICT COURT'S REVIEW IS TO BE CONDUCTED *IN
          CAMERA* AND *EX PARTE*..................................................................... 21
          1.   *In Camera, Ex Parte* Review is the Rule.................................... 22
          2.   *In Camera, Ex Parte* Review Is Constitutional ........................ 30
     B.   THE DISTRICT COURT'S SUBSTANTIVE REVIEW ....................... 32
          1.   Standard of Review of Probable Cause ..................................... 33
          2.   Probable Cause Standard Under FISA ....................................... 35
          3.   Standard of Review for Executive Branch Certifications .............. 38
          4.   FISA Is Subject to the "Good Faith" Exception ........................ 40
IV.  THE ELECTRONIC SURVEILLANCE AND PHYSICAL SEARCH AT
     ISSUE WERE LAWFULLY AUTHORIZED AND CONDUCTED ........... 42
     A.   THE FISA APPLICATION(S) SATISFIED FISA'S PROBABLE
          CAUSE STANDARD ............................................................................ 42
          1.   [CLASSIFIED INFORMATION REDACTED]........................... 42
          2.   [CLASSIFIED INFORMATION REDACTED]........................... 42
          3.   [CLASSIFIED INFORMATION REDACTED]........................... 42
     B.   THE CERTIFICATION(S) COMPLIED WITH FISA ......................... 43
          1.   Foreign Intelligence Information............................................... 43
          2.   "A Significant Purpose"............................................................. 43
          3.   Information Not Reasonably Obtainable Through Normal
               Investigative Techniques ........................................................... 43
     C.   THE ELECTRONIC SURVEILLANCE AND PHYSICAL SEARCH
          WERE CONDUCTED IN CONFORMITY WITH AN ORDER OF
          AUTHORIZATION OR APPROVAL..................................................... 43
          1.   The Minimization Procedures.................................................... 43

2. The FISA Information Was Appropriately Minimized ................... 49

V. THE COURT SHOULD REJECT THE DEFENDANTS' LEGAL
ARGUMENTS ........................................................................................ 49

A. The Defendants Have Not Established Any Colorable Basis for the Court
to Disclose the FISA Materials .................................................... 51

B. The Defendants Have Not Established Any Colorable Basis for the Court
to Suppress the FISA Information ........................................ 54

1. The Government Has Satisfied the Applicable "Significant Purpose"
Standard ................................................................................. 56

2. The Government Has Satisfied the Certification Requirements and
Normal Investigative Techniques Standards ................................... 58

3. The Government Satisfied the Probable Cause Standard ............... 61

4. The Government Has Satisfied the Particularity Requirement ....... 63

5. The Court Should Not Second-Guess Whether the Need for Secrecy
Still Exists ............................................................................. 64

VI. CONCLUSION: THERE IS NO BASIS FOR THE COURT TO DISCLOSE
THE FISA MATERIALS OR SUPPRESS THE FISA INFORMATION ..... 66

iii

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*ACLU Found. of So. Cal. v. Barr*,
　952 F.2d 457 (D.C. Cir. 1991)................................................................30

*Brady v. Maryland*,
　373 U.S. 83 (1963).................................................................................65

*CIA v. Sims*,
　471 U.S. 159 (1985)........................................................................ 27, 28

*Davis v. United States*,
　564 U.S. 229 (2011).............................................................................41

*Dep't of Navy v. Egan*,
　484 U.S. 518 (1988).............................................................................66

*Franks v. Delaware*,
　438 U.S. 154 (1978)........................................................................54-55

*In re Grand Jury Proceedings of the Special Apr. 2002 Grand Jury*,
　347 F.3d 197 (7th Cir. 2003) ......................................................... 24, 52

*Halperin v. CIA*,
　629 F.2d 144 (D.C. Cir. 1980)..............................................................28

*Illinois v. Gates*,
　462 U.S. 213 (1983) ................................................................. 33, 34, 62

*Illinois v. Krull*,
　480 U.S. 340 (1987)..............................................................................41

*In re Kevork*,
　634 F. Supp. 1002 (C.D. Cal. 1985) ............................................ 25-26, 45

*Mason v. Godinez*,
　47 F.3d 852 (7th Cir. 1995) ..................................................................61

*Phillippi v. CIA*,
　655 F.2d 1325 (D.C. Cir. 1981)............................................................27

*In re Sealed Case,*
    310 F.3d 717 (FISA Ct. Rev. 2002)............................................ 37, 44, 45, 57, 61

*Scott v. United States,*
    436 U.S. 128 (1978)..................................................................................47

*United States v. Abu-Jihaad,*
    630 F.3d 102 (2d Cir. 2010).......................................................... *passim*

*United States v. Abu-Jihaad,*
    531 F. Supp. 2d 299 (D. Conn. 2008).................................................... 22, 24, 26

*United States v. Ahmed,*
    No. 1:06-CR-147, 2009 U.S. Dist. LEXIS 120007 (N.D. Ga. Mar.
    19, 2009) ............................................................................. 33-34, 40, 62

*United States v. Alimehmeti,*
    No. 1:16-CR-398-PAE, ECF No. 68 (S.D.N.Y. Sept. 22, 2017) ................ 24, 34

*United States v. Allen,*
    211 F.3d 970 (6th Cir. 2000) ...............................................................34

*United States v. Alwan,*
    No. 1:11-CR-13, 2012 WL 399154 (W.D. Ky. Feb. 7, 2012)..................... 33, 36

*United States v. Amawi,*
    531 F. Supp. 2d 832 (N.D. Ohio 2008)................................................. 23, 27, 28

*United States v. Badia,*
    827 F.2d 1458 (11th Cir. 1987) ...................................................... 25, 53, 59, 60

*United States v. Belfield,*
    692 F.2d 141 (D.C. Cir. 1982)................................................................ *passim*

*United States v. Benkahla,*
    437 F. Supp. 2d 541 (E.D. Va. 2006) ....................................................30-31, 57

*United States v. Bin Laden,*
    126 F. Supp. 2d 264 (S.D.N.Y. 2000) ...................................................... 41, 44

*United States v. Bynum,*
    485 F.2d 490 (2d Cir. 1973).....................................................................46

*United States v. Campa,*
   529 F.3d 980 (11th Cir. 2008) ..................................................................60

*United States v. Cavanagh,*
   807 F.2d 787 (9th Cir. 1987) ........................................... 20, 35, 36, 38

*United States v. Daher,*
   No. 18-20559, 2020 WL 7664789 (E.D. Mich. Dec. 24, 2020)................. *passim*

*United States v. Damrah,*
   412 F.3d 618 (6th Cir. 2005) ........................................... 30, 37, 56-57

*United States v. Daoud,*
   755 F.3d 479 (7th Cir. 2014) ..................................................... *passim*

*United States v. Daoud,*
   No. 12-CR-723, 2014 WL 321384 (N.D. Ill. Jan. 29, 2014)............................ 24

*United States v. Duggan,*
   743 F.2d 59 (2d Cir. 1984)...................................................... *passim*

*United States v. Duka,*
   671 F.3d 329 (3d Cir. 2011)........................................... 20, 36, 41, 57

*United States v. El-Mezain,*
   664 F.3d 467 (5th Cir. 2011) ........................................ 20, 23, 24, 30, 36

*United States v. Falvey,*
   540 F. Supp. 1306 (E.D.N.Y. 1982) ........................................... 31, 38

*United States v. Fishenko,*
   No. 12-CV-626 (SJ), 2014 WL 4804215 (E.D.N.Y. Sept. 25, 2014)................34

*United States v. Garcia,*
   413 F.3d 201 (2d Cir. 2005).............................................................60

*United States v. Hammoud,*
   381 F.3d 316 (4th Cir. 2005) ..................................................... 46, 47

*United States v. Helton,*
   35 F.4th 511, 521 (6th Cir. 2022) ...................................................41

*United States v. Husayn*,
　142 S.Ct. 959 (2022)..........................................................................................65

*United States v. Isa*,
　923 F.2d 1300 (8th Cir. 1991) ...................................................23, 24, 27, 30, 47

*United States v. Islamic Am. Relief Agency*,
　No. 07-00087-CR-W-NKL, 2009 WL 5169536 (W.D. Mo. Dec.
　21, 2009) ........................................................................................ 27, 39, 60

*United States v. Johnson*,
　952 F.2d 565 (1st Cir. 1991)..............................................................................58

*United States v. Joseph*,
　709 F.3d 1082 (11th Cir. 2013) ........................................................................34

*United States v. Kashmiri*,
　No. 09-CR-830-4, 2010 WL 4705159 (N.D. Ill. Nov. 10, 2010)................ 33, 60

*United States v. Krupa*,
　658 F.3d 1174 (9th Cir. 2011) ..........................................................................34

*United States v. Leon*,
　468 U.S. 897 (1984)................................................................................ *passim*

*United States v. Mahamud*,
　838 F. Supp. 2d 881 (D. Minn. 2012)................................................................58

*United States v. Marzook*,
　435 F. Supp. 2d 778 (N.D. Ill. 2006)........................................................... 38, 57

*United States v. Medunjanin*,
　No. 10-CR-19-1, 2012 WL 526428
　(E.D.N.Y. Feb. 16, 2012)......................................................... 27, 34, 48, 53, 62

*United States v. Megahey*,
　553 F. Supp. 1180 (E.D.N.Y. 1982) ..................................................................31

*United States v. Mihalik*,
　No. 11-CR-833(A), ECF. No. 108 (C.D. Cal., Oct. 3, 2012)............................60

*United States v. Mohammad*,
　339 F. Supp. 3d 724 (N.D. Ohio 2018)......................................... 33, 56, 59, 61, 65

vii

*United States v. Mohamud,*
No. 3:10-CR-00475-KI-1, 2014 WL 2866749 (D. Or. June 24, 2014) ..................................................................................53

*United States v. Mubayyid,*
521 F. Supp. 2d 125 (D. Mass. 2007)......................... 38, 45, 47, 53, 57

*United States v. Naser,*
No. 22-CR-20504, ECF No. 221 (E.D. Mich., March 4, 2025) ................ *passim*

*United States v. Nicholson,*
955 F. Supp. 588 (E.D. Va. 1997) ................................................25

*United States v. Ning Wen,*
477 F.3d 896 (7th Cir. 2007) ......................... 20, 38, 40, 57

*United States v. Omar,*
786 F.3d 1104 (8th Cir. 2015) ......................... 23, 24, 33, 35

*United States v. Ott,*
827 F.2d 473 (9th Cir. 1987) ......................... 26, 30

*United States v. Pelton,*
835 F.2d 1067 (4th Cir. 1987) ......................... 20, 38

*United States v. Rahman,*
861 F. Supp. 247 (S.D.N.Y. 1994) ......................... 17, 44, 45

*United States v. Robinson,*
724 F.3d 878 (7th Cir. 2013) ................................................34

*United States v. Rosen,*
447 F. Supp. 2d 538 (E.D. Va. 2006) ......................... *passim*

*United States v. Salameh,*
152 F.3d 88 (2d Cir. 1998)................................................44

*United States v. Sattar,*
No. 02-CR-395, 2003 WL 22137012 (S.D.N.Y. Sept. 15, 2003) ......................25

*United States v. Smith,*
581 F.3d 692 (8th Cir. 2009) ................................................34

*United States v. Squillacote,*
    221 F.3d 542 (4th Cir. 2000) .................................................................17

*United States v. Stewart,*
    590 F.3d 93 (2d Cir. 2009)......................................... 24, 29, 30, 34, 62

*United States v. Thomson,*
    752 F. Supp. 75 (W.D.N.Y. 1990).................................... 25, 26, 45, 46

*United States v. Turner,*
    840 F.3d 336 (7th Cir. 2016) .................................................. 35, 59, 60

*United States v. United States Dist. Court for Eastern Dist. of Mich.,*
    407 U.S. 297 (1972).................................................................…..36, 37

*United States v. U.S. Gypsum Co.,*
    333 U.S. 364 (1948)..............................................................…..40, 60

*United States v. Warsame,*
    547 F. Supp. 2d 982 (D. Minn. 2008)......................................... *passim*

*United States v. Yunis,*
    867 F.2d 617 (D.C. Cir. 1989)...........................................................28

## U.S. Constitution

U.S. Const. amend. I ........................................................................17

U.S. Const. amend. IV ............................................................... *passim*

## Federal Statutes

18 U.S.C. § 924 ................................................................................4

18 U.S.C. § 2339B ............................................................................4

50 U.S.C. § 1801 ...................................................................... *passim*

50 U.S.C. §§ 1801-1812...................................................................2

50 U.S.C. § 1803 .........................................................................8, 9

50 U.S.C. § 1804 ...................................................................... *passim*

50 U.S.C. § 1805 ............................................................................................. *passim*

50 U.S.C. § 1806 ............................................................................................. *passim*

50 U.S.C. § 1821 ............................................................................................. *passim*

50 U.S.C. §§ 1821-1829 ..........................................................................................2

50 U.S.C. § 1823 ............................................................................................. *passim*

50 U.S.C. § 1824 ............................................................................................. *passim*

50 U.S.C. § 1825 ............................................................................................. *passim*

Omnibus Crime Control and Safe Streets Act of 1968
     Title III,  Pub. L. No. 90-351, 82 Stat. 197
     (codified as amended at 18 U.S.C. §§ 2510-2522) ........................... 36, 37, 45, 47

Uniting and Strengthening America by Providing Appropriate Tools
     Required to Intercept and Obstruct Terrorism Act,
     Pub. L. No. 107-56, 115 Stat. 272 (2001) ...................................................... 12, 56

**Other Authorities**

Fed. R. Crim. P. 41 ..............................................................................................34

H.R. Rep. No. 95-1283, 95th Cong., 2d Sess., pt. 1 (1978) ......................... 45, 46, 48

S. Rep. No. 95-604, pt. 1, 95th Cong., 1st Sess. (1978),
     *reprinted in* 1978 U.S.C.C.A.N. 3904 ..............................................................23

S. Rep. No. 95-701, 95th Cong., 2d Sess. (1978),
     *reprinted in* 1978 U.S.C.C.A.N. 3973 ...................................... 37, 46, 47, 51, 52

## I.  INTRODUCTION

The Government is filing this unclassified memorandum in opposition to Defendants ██████████████████████████, Mohmed Ismail Ali (Ali), Majed Mahmoud (Mahmoud), Ayob Nasser (Ayob), █████████████████ (collectively, "the defendants") various Motions to Disclose and Suppress FISA Materials (collectively, "the defendants' Motions").[1] (Ayob, ECF No. 39; Ali, ECF No. 49; Mahmoud, ECF No. 50; ████████████████████ ██)[2] Collectively, the defendants move the Court to: (1) compel the Government "to determine if the Attorney General will submit an affidavit attesting that disclosure of FISA applications, FISA orders, and other FISA materials in this case [(the 'FISA materials')] would harm national security;" (2) provide the defendants with "a copy of the Attorney General affidavit, if filed;" (3) conduct an *in camera*, *ex parte* inspection of the FISA materials to "determine whether the surveillance was lawfully authorized and appropriately conducted;" (4) disclose any FISA materials to defendants' counsel "because such disclosures are necessary to make an accurate determination of the legality of the surveillance;" and (5) "[s]uppress all information unlawfully acquired or surveillance conducted not in conformity

---

[1] As a result of the redactions, the pagination and footnote numbering of the classified memorandum and the unclassified memoranda are different.

[2] Ali, Mahmoud, and Ayob's case number is 25-CR-20842; ████████████ ███████████████████████████████████████████████.

1

with an order of authorization or approval, and suppress any fruits" of unlawful surveillance or searches.[3]  (Ayob, ECF No. 39; Ali, ECF No. 49; Mahmoud, ECF No. 50; ███████████████████████████.)

The defendants' Motions have triggered this Court's review of the FISA materials related to the FISA-authorized electronic surveillance and physical search to determine whether the FISA information was lawfully acquired and whether the electronic surveillance and physical search were made in conformity with an order of authorization or approval.[4]  FISA specifies:

> [W]henever a motion is made pursuant to subsection (e) . . . to discover or obtain applications or orders or other materials relating to electronic surveillance [or physical search] or to discover, obtain, or suppress evidence or information obtained or derived from electronic surveillance [or physical search] under this Act, the United States district court . . . shall, . . . if the Attorney General[5] files an affidavit under oath that

---

[3]  **[CLASSIFIED INFORMATION REDACTED]**

[4]  The provisions of FISA that address electronic surveillance are found at 50 U.S.C. §§ 1801-1812; those that address physical search are found at 50 U.S.C. §§ 1821-1829.  These two sets of provisions are in many respects parallel and almost identical.  Citations herein are generally to the two sets of provisions in parallel, with the first citation being to the relevant electronic surveillance provision, and the second citation being to the relevant physical search provision.  This memorandum references the statutory language in effect at the time relevant to this matter.

[5]  As defined in FISA, "Attorney General" means the Attorney General of the United States (or Acting Attorney General), the Deputy Attorney General, or, upon the designation of the Attorney General, the Assistant Attorney General for National Security (AAG/NS).  *See* 50 U.S.C. §§ 1801(g), 1821(1).  Such designation was made by then-Attorney General Eric. H. Holder, Jr., on April 24, 2009.

> disclosure or an adversary hearing would harm the national security of the United States, review *in camera* and *ex parte* the application, order, and such other materials relating to the surveillance [or search] as may be necessary to determine whether the surveillance [or search] of the aggrieved person was lawfully authorized and conducted.

50 U.S.C. §§ 1806(f), 1825(g). The Government is filing herewith such affidavits.[6]

Accordingly, this Court must conduct an *in camera, ex parte* review of the FISA

materials relevant to the defendants' motions consistent with 50 U.S.C. §§ 1806(f)

and 1825(g).[7]

As discussed below, this Court's *in camera, ex parte* review will show that:

(1) suppression of the FISA information is unwarranted because the electronic

surveillance and physical search at issue were lawfully authorized and conducted

in compliance with FISA; (2) disclosure of the FISA materials to the defendants is

not authorized because this Court can determine the legality of the FISA-

authorized electronic surveillance and physical search without disclosing the FISA

---

[6] ████████████████████████████████████████ The Declaration and Claim of Privilege of the Attorney General related to Ali, Mahmoud, and Ayob is filed both publicly and as an exhibit in the Sealed Appendix to the classified filing. *See* Sealed Ex. 1. ████████

[7] **[CLASSIFIED INFORMATION REDACTED]**

3

materials or portions thereof, and (3) due process does not otherwise require disclosure of the FISA applications to the defense.

### A. BACKGROUND

### [CLASSIFIED INFORMATION REDACTED]

On October 31, 2025, a date whose relevance will be discussed in detail below, ▮▮▮▮▮▮ Ali, and Mahmoud were arrested pursuant to a criminal complaint (Ali and Mahmoud, ECF No. 1.) ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ alleging violations of 18 U.S.C. § 924(h) (receiving and transferring, and attempting and conspiring to transfer, firearms and ammunition knowing and having reasonable cause to believe that the firearms and ammunition would be used to commit a Federal crime of terrorism). On November 5, 2025, Ayob ▮▮▮▮ were arrested pursuant to an amended criminal complaint (Ayob, ECF No. 17.) ▮▮▮▮▮▮▮▮▮▮▮ alleging violations of both 18 U.S.C. § 924(h) and 18 U.S.C. § 2339B (conspiring to provide material support or resources to a designated Foreign Terrorist Organization). ▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮ On November 12, 2025, a grand jury in the Eastern District of Michigan returned an indictment charging Ali, Mahmoud, and Ayob with violating 18 U.S.C. § 924(h) and 18 U.S.C. § 2339B.



4

(Ali *et al.*, ECF No. 36.)  The charges against the defendants involve their conspiracy to transfer and receive firearms and ammunition in order to carry out a plot to conduct an armed attack on behalf of a designated Foreign Terrorist Organization.

On November 6, 2025, the Government provided notice to the district court and to Ali, Ayob, and Mahmoud of its intent to offer into evidence or otherwise use or disclose information obtained or derived from electronic surveillance conducted pursuant to FISA.  (Ali *et al.*, ECF No. 24.)  *See* 50 U.S.C. § 1806(c).

On November 17, 2025, Ayob filed a motion to suppress information obtained or derived from FISA-authorized electronic surveillance and physical search and to disclose the FISA applications, orders, and other materials.  On

November 19, 2025, Ali moved to join Ayob's motion. Likewise, on November 20, 2025, Mahmoud moved to join Ali's motion. (Ayob, ECF No. 39; Ali, ECF No. 49; Mahmoud, ECF No. 50.)[8] ███████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

█████████████████████████████████████ Accordingly, this Court will review the legality of certain electronic surveillance and physical search authorized by the FISC. *See* 50 U.S.C. §§ 1806(f), 1825(g).

---

[8] Ali's and Mahmoud's filings sought only to join Ayob's Motion to Disclose and Suppress FISA Materials and did not raise or add any additional arguments. Consequently, all future references and citations to Ayob's Motion also address Ali and Mahmoud's Joinder Motions.

[9] While the defendants' Motions indicate that each of the defendants received notice of the government's intent to use FISA information obtained or derived from both electronic surveillance and physical search, this is not true for the notice that the government provided to Ayob, Ali, Mahmoud, ██████. (Ali *et al.*, ECF No. 39; ███████████) For Ayob, Ali, Mahmoud, ██████, the Government only provided notice that it intends to use information obtained or derived pursuant to electronic surveillance. (Ali *et al.*, ECF No. 24; ████████████████████████████████████████████████████████████████████████████████████) As described further below, while the Government may use the same FISA information against all defendants, only ████████ an "aggrieved person" with respect to physical search pursuant to 50 U.S.C. § 1825(g).

**[CLASSIFIED INFORMATION REDACTED]**[10]

**B.    OVERVIEW OF THE FISA AUTHORITIES**

**[CLASSIFIED INFORMATION REDACTED]**[11]

## II.    THE FISA PROCESS

To aid this Court's review, this brief provides an overview of the FISA process. It covers the FISC's and the Attorney General's roles prescribed in FISA, the requirements to apply for a FISA order to conduct electronic surveillance or physical search, the findings the FISC must make in issuing such an order, and the procedures and standards governing a district court's review of FISA authorities when evidence obtained or derived therefrom is used in criminal proceedings. Not every part of FISA discussed below is at issue, and this brief notes where certain aspects of FISA are not directly implicated in this matter. This brief still discusses those other aspects to give context for this Court's review of the surveillance and search at issue.

---

[10] [REDACTED]

[11] Under FISA, initial FISC approval for electronic surveillance, physical search, or both extends for 90 days in cases targeting United States persons and 120 days in cases targeting non-United States persons. *See* 50 U.S.C. §§ 1805(d)(1)(B); 1824(d)(1)(B). Under FISA, renewed FISC approval for electronic surveillance and/or physical search targeting non-United States persons may be extended by the FISC for up to one year. *See id.* §§ 1805(d)(2); 1824(d)(2). **[CLASSIFIED INFORMATION REDACTED]**

## A.   OVERVIEW OF FISA

Enacted in 1978, and subsequently amended, FISA authorizes the Chief Justice of the United States to designate eleven United States district judges to sit as judges of the FISC. 50 U.S.C. § 1803(a)(1). The FISC judges are empowered to consider *ex parte* applications submitted by the Executive Branch for electronic surveillance and physical search when a significant purpose of the application is to obtain foreign intelligence information, as defined in FISA. Rulings of the FISC are subject to review by the Foreign Intelligence Surveillance Court of Review (FISC of Review), which is composed of three United States district or circuit judges who are designated by the Chief Justice. *Id.* § 1803(b).

FISA provides a statutory procedure whereby the Executive Branch may obtain a judicial order authorizing the use of electronic surveillance and/or physical search in the United States when a significant purpose is the collection of foreign intelligence information.[12] *Id.* §§ 1804(a)(6)(B), 1823(a)(6)(B). Under FISA, foreign intelligence information means:

> (1) information that relates to, and if concerning a United States person[13] is necessary to, the ability of the United States to protect against—
>
> (A) actual or potential attack or other grave hostile acts of a foreign power or an agent of a foreign power;

---

[12] **[CLASSIFIED INFORMATION REDACTED]**

[13] **[CLASSIFIED INFORMATION REDACTED]**.

(B) sabotage, international terrorism, or the international proliferation of weapons of mass destruction by a foreign power or an agent of a foreign power; or

(C) clandestine intelligence activities by an intelligence service or network of a foreign power or by an agent of a foreign power; or

(2) information with respect to a foreign power or foreign territory that relates to, and if concerning a United States person is necessary to—

(A) the national defense or the security of the United States; or

(B) the conduct of the foreign affairs of the United States.

50 U.S.C. § 1801(e); *see also id.* § 1821(1) (adopting the definitions from 50 U.S.C. § 1801). Except for emergency authorizations, FISA requires the Government to obtain a court order before it conducts any electronic surveillance or physical search in the United States or targeting a U.S. person.

FISA provides that the Attorney General may authorize the emergency employment of electronic surveillance and physical search if the Attorney General:

(A) reasonably determines that an emergency situation exists with respect to the employment of electronic surveillance [or physical search] to obtain foreign intelligence information before an order authorizing such surveillance can with due diligence be obtained;

(B) reasonably determines that the factual basis for the issuance of an order under this title to approve such electronic surveillance [or physical search] exists;

(C) informs, either personally or through a designee, a judge having jurisdiction under [50 U.S.C. § 1803] at the time of such authorization

9

that the decision has been made to employ emergency electronic surveillance [or physical search]; and

(D) makes an application in accordance with this title to a judge having jurisdiction under section 103 as soon as practicable, but not later than seven days after the Attorney General authorizes such electronic surveillance [or physical search].

*See id.* §§ 1805(e)(1), 1824(e)(1).

## B.    THE FISA APPLICATION

An application to conduct electronic surveillance pursuant to FISA must contain, among other things:

(1) the identity of the federal officer making the application;

(2) the identity, if known, or a description of the specific target of the electronic surveillance;

(3) a statement of the facts and circumstances supporting probable cause to believe that the target is a foreign power or an agent of a foreign power, and that each facility or place at which the electronic surveillance is directed is being used, or is about to be used, by a foreign power or an agent of a foreign power;

(4) a statement of the proposed minimization procedures;

(5) a description of the nature of the information sought and the type of communications or activities to be subjected to the surveillance;

(6) a certification, discussed below, of a high-ranking official;

(7) a summary of the manner or means by which the electronic surveillance will be effected and a statement whether physical entry is required to effect the electronic surveillance;

10

(8) the facts concerning and the action taken on all previous FISA applications involving any of the persons, facilities, or places specified in the application; and

(9) the proposed duration of the electronic surveillance.

50 U.S.C. § 1804(a)(1)-(9).

An application to conduct a physical search pursuant to FISA must contain similar information as an application to conduct electronic surveillance, except that an application to conduct a physical search must also contain a statement of the facts and circumstances justifying an applicant's belief that "the premises or property to be searched contains foreign intelligence information" and that each "premises or property to be searched is or is about to be owned, used, possessed by, or is in transit to or from" the target. *Id.* § 1823(a)(1-8), (a)(3)(B), (C).

### 1. The Certification

An application to the FISC for a FISA order must include a certification from a high-ranking Executive Branch official with national security responsibilities that:

(A) the certifying official deems the information sought to be foreign intelligence information;

(B) a significant purpose of the surveillance is to obtain foreign intelligence information;

(C) such information cannot reasonably be obtained by normal investigative techniques;

(D) designates the type of foreign intelligence information being sought according to the categories described in [50 U.S.C. §] 1801(e); and

(E) includes a statement of the basis for the certification that –

(i) the information sought is the type of foreign intelligence information designated; and

(ii) such information cannot reasonably be obtained by normal investigative techniques.

50 U.S.C. § 1804(a)(6); *see also id.* § 1823(a)(6).

As originally enacted, FISA required that a high-ranking member of the Executive Branch of Government certify that "the purpose" of the FISA application was to obtain foreign intelligence information. In 2001, FISA was amended as part of the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act (USA PATRIOT Act).[14] The USA PATRIOT Act changed FISA so that a high-ranking official must now certify that the acquisition of foreign intelligence information is "a significant purpose" of the requested surveillance or search. *See id.* §§ 1804(a)(6)(B), 1823(a)(6)(B).

### 2. Minimization Procedures

The Attorney General has adopted, and the FISC has approved, minimization procedures that regulate the acquisition, retention, and dissemination

---

[14] Pub. L. No. 107-56, 115 Stat. 272 (2001).

of non-publicly available information concerning unconsenting U.S. persons that

was obtained through FISA-authorized electronic surveillance or physical search,

including persons who are not the targets of the FISA authorities. FISA requires

that such minimization procedures be:

> reasonably designed in light of the purpose and technique of the particular surveillance, to minimize the acquisition and retention, and prohibit the dissemination, of nonpublicly available information concerning unconsenting United States persons consistent with the need of the United States to obtain, produce, and disseminate foreign intelligence information.

50 U.S.C. §§ 1801(h)(1), 1821(4)(A).

Minimization procedures also include "procedures that allow for the

retention and dissemination of information that is evidence of a crime which has

been, is being, or is about to be committed and that is to be retained or

disseminated for law enforcement purposes." *Id.* §§ 1801(h)(3), 1821(4)(c).

**[CLASSIFIED INFORMATION REDACTED]**

### 3.   Attorney General's Approval

FISA also requires that the Attorney General approve applications for

electronic surveillance and/or physical search before they are presented to the

FISC, "based upon [a] finding that it satisfies the criteria and requirements" in

FISA. *Id.* §§ 1804(a), 1823(a).

## C.   THE FISC'S ORDERS

Once approved by the Attorney General, the application is submitted to the FISC and assigned to one of its judges.  The FISC may approve the requested electronic surveillance and/or physical search only upon finding, among other things, that:

> (1) the application has been made by a Federal officer and has been approved by the Attorney General;
>
> (2) there is probable cause to believe that (A) the target of the electronic surveillance and/or physical search is a foreign power or an agent of a foreign power, and that (B) the facilities or places at which the electronic surveillance is directed are being used, or are about to be used, by a foreign power or an agent of a foreign power, or that the premises or property to be searched is, or is about to be, owned, used, possessed by, or is in transit to or from, a foreign power or an agent of a foreign power;
>
> (3) the proposed minimization procedures meet the statutory requirements set forth in section 1801(h) (electronic surveillance) and section 1821(4) (physical search);
>
> (4) the application contains all of the statements and certifications required by section 1804 (electronic surveillance) or section 1823 (physical search); and
>
> (5) if the target is a United States person, the certifications are not clearly erroneous.

50 U.S.C. §§ 1805(a)(1)-(4), 1824(a)(1)-(4).

FISA defines "foreign power" to mean—

> (1) a foreign government or any component, thereof, whether or not recognized by the United States;

14

(2) a faction of a foreign nation or nations, not substantially composed of United States persons;

(3) an entity that is openly acknowledged by a foreign government or governments to be directed and controlled by such foreign government or governments;

(4) a group engaged in international terrorism or activities in preparation therefor;

(5) a foreign-based political organization, not substantially composed of United States persons;

(6) an entity that is directed and controlled by a foreign government or governments; or

(7) an entity not substantially composed of United States persons that is engaged in the international proliferation of weapons of mass destruction.

50 U.S.C. § 1801(a)(1)-(7); *see also id.* § 1821(1) (adopting definitions from 50 U.S.C. § 1801).

"Agent of a foreign power" means—

(1) any person other than a United States person, who—

(A) acts in the United States as an officer or employee of a foreign power, or as a member of a foreign power as defined in subsection (a)(4), irrespective of whether the person is inside the United States;

(B) acts for or on behalf of a foreign power which engages in clandestine intelligence activities in the United States contrary to the interests of the United States, when the circumstances indicate that such person may engage in such activities, or when such person knowingly aids or abets any person in the conduct of such activities or knowingly conspires with any person to engage in such activities;

15

(C) engages in international terrorism or activities in preparation therefore [sic];

(D) engages in the international proliferation of weapons of mass destruction, or activities in preparation therefor; or

(E) engages in the international proliferation of weapons of mass destruction, or activities in preparation therefor, for or on behalf of a foreign power, or knowingly aids or abets any person in the conduct of such proliferation or activities in preparation therefor, or knowingly conspires with any person to engage in such proliferation or activities in preparation therefor; or

(2) any person who—

(A) knowingly engages in clandestine intelligence gathering activities for or on behalf of a foreign power, which activities involve or may involve a violation of the criminal statutes of the United States;

(B) pursuant to the direction of an intelligence service or network of a foreign power, knowingly engages in any other clandestine intelligence activities for or on behalf of such foreign power, which activities involve or are about to involve a violation of the criminal statutes of the United States;

(C) knowingly engages in sabotage or international terrorism, or activities that are in preparation therefor, for or on behalf of a foreign power;

(D) knowingly enters the United States under a false or fraudulent identity for or on behalf of a foreign power or, while in the United States, knowingly assumes a false or fraudulent identity for or on behalf of a foreign power; or

(E) knowingly aids or abets any person in the conduct of activities described in subparagraphs (A), (B), or (C) or knowingly conspires with any person to engage in activities described in subparagraphs (A), (B), or (C).

16

50 U.S.C. § 1801(b)(1), (2); *see also id.* § 1821(1) (adopting definitions from

50 U.S.C. § 1801).

FISA specifies that no U.S. person may be considered a foreign power or an

agent of a foreign power based solely on First Amendment protected activities. *Id.*

§§ 1805(a)(2)(A), 1824(a)(2)(A).  Although First Amendment protected activities

cannot form the sole basis for FISA-authorized electronic surveillance or physical

search, the FISC may consider them if other activity indicates the target is an agent

of a foreign power. *United States v. Rosen*, 447 F. Supp. 2d 538, 548-49 (E.D. Va.

2006); *United States v. Rahman*, 861 F. Supp. 247, 252 (S.D.N.Y. 1994), *aff'd*, 189

F.3d 88 (2d Cir. 1999).

The FISA application must establish probable cause to believe the target is

acting as an agent of a foreign power at the time of the application. *United States*

*v. Squillacote*, 221 F.3d 542, 554 (4th Cir. 2000).  However, in determining

whether probable cause exists, FISA allows a judge to "consider past activities of

the target, as well as facts and circumstances relating to current or future activities

of the target." 50 U.S.C. §§ 1805(b), 1824(b).

If the FISC makes all necessary findings and concludes the FISA application

meets the statutory provisions, the FISC issues an *ex parte* order authorizing the

electronic surveillance and/or physical search requested in the application.

50 U.S.C. §§ 1805(a), 1824(a).  The order must:

17

(1) . . . specify—

(A) the identity, if known, or a description of the specific target of the [collection];

(B) the nature and location of each of the facilities or places at which the electronic surveillance will be directed, if known [and/or of each of the premises or properties to be searched];

(C) the type of information sought to be acquired and the type of communications or activities to be subjected to the [electronic] surveillance [and/or the type of information, material, or property to be seized, altered, or reproduced through the physical search];

(D) the means by which the electronic surveillance will be effected and whether physical entry will be used to effect the surveillance [and/or a statement of the manner in which the physical search will be conducted and, whenever more than one physical search is authorized under the order, the authorized scope of each search and what minimization procedures shall apply to the information acquired by each search]; and

(E) the period of time during which the electronic surveillance is approved [and/or the period of time during which physical searches are approved; and]

(2) . . . direct—

(A) that the minimization procedures be followed . . . .

*Id.* §§ 1805(c)(1), (2)(A), 1824(c)(1), (2)(A).

Initial FISC approval for electronic surveillance and/or physical search targeting a U.S. person may be approved for up to 90 days, and those targeting a non-U.S. person may be approved for up to 120 days. *Id.* §§ 1805(d)(1), 1824(d)(1). The FISC may renew such approval, but only if the Government

18

submits another application that complies with FISA's requirements.  A renewal for electronic surveillance or physical search targeting a U.S. person may be approved for up to 90 days, and one targeting a non-U.S. person may be approved for up to one year.[15]  *See* 50 U.S.C. §§ 1805(d)(2), 1824(d)(2).

## III.    THE DISTRICT COURT'S REVIEW OF FISC ORDERS

FISA authorizes the use of information obtained or derived from electronic surveillance and physical search in a criminal prosecution, provided that advance authorization is obtained from the Attorney General, *see* 50 U.S.C. §§ 1806(b), 1825(c), and that notice of the surveillance and search is given to the court and to each aggrieved person against whom the information is to be used.  *Id.* §§ 1806(c)–(d), 1825(d)–(e).[16]  Upon receiving notice, the aggrieved person against whom FISA information is to be used may move to suppress the information on two grounds: (1) that "the information was unlawfully acquired"; or (2) that "the surveillance [or search] was not made in conformity with an order of authorization or approval."  *Id.* §§ 1806(e), 1825(f).

---

[15]  The FISC retains the authority to review, before the end of the authorized period of electronic surveillance or physical search, the Government's compliance with the requisite minimization procedures.  *See* 50 U.S.C. §§ 1805(d)(3), 1824(d)(3).

[16]  Each defendant is an "aggrieved person" under FISA as to electronic surveillance and/or physical search, and as noted above, was provided with notice of their status as such and of the Government's intent to use FISA-obtained or -derived information against them in this case.

In addition, FISA provides that a defendant who is an aggrieved person may file "a motion or request . . . pursuant to any other statute or rule of the United States . . . to discover or obtain applications or orders or other materials relating to electronic surveillance [or physical search] or to discover, obtain, or suppress evidence or information obtained or derived [therefrom]." 50 U.S.C. §§ 1806(f), 1825(g). When a defendant moves to suppress FISA information under 50 U.S.C. §§ 1806(e) or 1825(f), or seeks to discover the FISA materials under some other statute or rule, the motion or request is evaluated using FISA's probable cause standard, which is discussed in more detail below, and not the probable cause standard applicable to criminal warrants. *See, e.g., United States v. Ning Wen*, 477 F.3d 896, 898 (7th Cir. 2007). "[FISA's] probable cause standard is different from the standard in the typical criminal case because, rather than focusing on probable cause to believe that a person has committed a crime, the FISA standard focuses on the status of the target as a foreign power or an agent of a foreign power." *United States v. El-Mezain*, 664 F.3d 467, 564 (5th Cir. 2011); *see also United States v. Duka*, 671 F.3d 329, 336-37 (3d Cir. 2011) (rejecting appellant's challenge to FISA's probable cause standard because it does not require any indication that a crime has been committed); *United States v. Pelton*, 835 F.2d 1067, 1075 (4th Cir. 1987); *United States v. Cavanagh*, 807 F.2d 787, 791 (9th Cir. 1987) (rejecting appellant's argument for suppression because evidence of criminal conduct was

20

incidentally discovered as the result of FISA surveillance not supported by probable cause of criminal activity).

## A.   THE DISTRICT COURT'S REVIEW IS TO BE CONDUCTED *IN CAMERA* AND *EX PARTE*

Once an aggrieved person has moved for disclosure of FISA materials or suppression of FISA information, "if the Attorney General files an affidavit under oath that disclosure or an adversary hearing would harm the national security of the United States," the district court adjudicating the motion "shall…review in camera and ex parte the application, order, and such other materials relating to the surveillance [or search] as may be necessary to determine whether the surveillance [or search] of the aggrieved person was lawfully authorized and conducted." 50 U.S.C. §§ 1806(f), 1825(g).

**[CLASSIFIED INFORMATION REDACTED]**

In conducting its *in camera, ex parte* review, the district court "may disclose to the aggrieved person, under appropriate security procedures and protective orders, portions of the application, order, or other materials relating to the surveillance *only where such disclosure is necessary to make an accurate determination of the legality of the surveillance [or search]*." 50 U.S.C. §§ 1806(f), 1825(g) (emphasis added). The district court's discretion to disclose FISA materials to an aggrieved defendant is thus highly circumscribed, and its exercise is unwarranted unless the court first concludes that it is unable to

21

accurately determine the legality of the FISA authorities even after reviewing the Government's *in camera* and *ex parte* submissions. *See, e.g., Abu-Jihaad*, 531 F. Supp. 299, 311 (D. Conn. 2008) ("The Court has read and re-read each [Government] submission and [FISC] order.  Having done so, the Court is satisfied that disclosure and an adversary hearing are not required in this case.  The Court is able to [determine] the legality of the surveillance on the basis of the materials submitted . . . *ex parte* and *in camera*."); *see also United States v. Abu-Jihaad*, 630 F.3d 102, 129 (2d Cir. 2010) (affirming based on an independent review of the materials submitted to the district court).  As the court stated in *United States v. Daoud*, "[u]nless and until a district judge performs his or her statutory duty of attempting to determine the legality of the surveillance without revealing any of the fruits of the surveillance to defense counsel, there is no basis for concluding that disclosure is necessary in order to avert an erroneous conviction."  755 F.3d 479, 484 (7th Cir. 2014); *see also United States v. Naser*, No. 22-CR-20504, ECF No. 221 at 10 (E.D. Mich., Mar. 4, 2025) (finding that an *in camera* and *ex parte* review of the FISA materials is required upon the filing of an Attorney General Claim of Privilege).

### 1.    *In Camera, Ex Parte* Review is the Rule

Federal courts have repeatedly and consistently held that FISA anticipates that an *ex parte*, *in camera* determination is to be the rule, while disclosure and an

22

adversary hearing are the exception, occurring *only* when necessary. *See United States v. Amawi*, 531 F. Supp. 2d 832, 837 (N.D. Ohio 2008) ("Where on the basis of what it receives from the government *in camera* and under seal, a district court concludes that it can determine whether a FISA surveillance and search was lawful, it may not order disclosure of any of the FISA materials."), *aff'd* 695 F.3d 457 (6th Cir. 2012); *Abu-Jihaad*, 630 F.3d at 129 ("conclud[ing] that disclosure of FISA materials 'is the exception and *in camera, ex parte* determination is the rule'"); *Daoud*, 755 F.3d at 481 (finding that "the district judge must, in a non-public ('*in camera*'), nonadversarial ('*ex parte*') proceeding, attempt to determine whether the surveillance was proper"); *Duggan*, 743 F.2d at 78;[17] *El-Mezain*, 664 F.3d at 567 ("disclosure of FISA materials is the exception and *ex parte, in camera* determination is the rule"); *Belfield*, 692 F.2d at 147; *accord United States v. Omar*, 786 F.3d 1104, 1110-11 (8th Cir. 2015) (quoting *Isa*, 923 F.2d at 1306); *Rosen*, 447 F. Supp. 2d at 546.

---

[17] In *Duggan*, the U.S. Court of Appeals for the Second Circuit explained that disclosure might be necessary "if the judge's initial review revealed potential irregularities such as 'possible misrepresentations of fact, vague identification of persons to be surveilled or surveillance records which include[] a significant amount of nonforeign intelligence information, calling into question compliance with the minimization standards contained in the order.'" 743 F.2d at 78 (quoting S. Rep. No. 95-604, pt. 1, 95th Cong., 1st Sess., at 58 (1978), *reprinted in* 1978 U.S.C.C.A.N. 3904, 3960).

In fact, every court but one (whose decision was subsequently overturned by the U.S. Court of Appeals for the Seventh Circuit[18] that has addressed a motion to disclose FISA materials or to suppress FISA information has been able to reach a conclusion as to the legality of the FISA collection at issue based on its *in camera, ex parte* review. *See, e.g., Naser*, No. 22-CR-20504, ECF No. 221 at 16; *United States v. Stewart*, 590 F.3d 93 (2d Cir. 2009); *Abu-Jihaad*, 531 F. Supp. 2d at 310; *Omar*, 786 F.3d at 1110-11; *El-Mezain*, 664 F.3d at 566 (quoting district court's statement that no court had ever held an adversarial hearing to assist the court); *In re Grand Jury Proceedings of the Special Apr. 2002 Grand Jury ("In re Grand Jury Proceedings")*, 347 F.3d 197, 203 (7th Cir. 2003) (noting that no court had ever ordered disclosure of FISA materials); *Isa*, 923 F.2d at 1306 ("study of the materials leaves no doubt that substantial national security interests required the *in camera, ex parte* review, and that the district court properly conducted such a review"); *United States v. Alimehmeti*, No. 1:16-CR-398-PAE, ECF No. 68 at 6 (S.D.N.Y. Sept. 22, 2017) (noting that *in camera, ex parte* determination of

---

[18] The district court in *United States v. Daoud*, No. 12-CR-723, 2014 WL 321384 (N.D. Ill. Jan. 29, 2014), ruled that it was capable of making the required determination, but nevertheless ordered the disclosure of FISA materials. The Government appealed the *Daoud* court's order to the Seventh Circuit, which overturned the district court's decision to disclose, stating, "So clear is it that the materials were properly withheld from defense counsel that there is no need for a remand to enable the district judge to come to the same conclusion, because she would have to do so." *Daoud*, 755 F.3d at 485.

24

legality of FISA surveillance is "the rule" and finding that, because such a review "permitted the Court to make an accurate determination of the challenged surveillance . . . [d]isclosure and an adversary hearing are therefore not necessary" (internal quotation marks omitted)); *United States v. Badia*, 827 F.2d 1458, 1463 (11th Cir. 1987); *Rosen*, 447 F. Supp. 2d at 546; *United States v. Sattar*, No. 02-CR-395, 2003 WL 22137012, at *6 (S.D.N.Y. Sept. 15, 2003) (citing *United States v. Nicholson*, 955 F. Supp. 588, 592 & n.11 (E.D. Va. 1997)) (noting at the time that "this court knows of no instance in which a court has required an adversary hearing or disclosure in determining the legality of a FISA surveillance"); *United States v. Thomson*, 752 F. Supp. 75, 79 (W.D.N.Y. 1990).

As the exhibits in the Sealed Appendix make clear, there is nothing extraordinary about the instant FISA-authorized electronic surveillance and physical search that would justify the production and disclosure of highly sensitive and classified FISA materials or the suppression of FISA-obtained or -derived evidence. Here, the FISA materials are well-organized and easily reviewable by the Court *in camera* and *ex parte*, and they are fully and facially sufficient to allow the Court to make an accurate determination that the FISA information was lawfully acquired and that the electronic surveillance and physical search were made in conformity with an order of authorization or approval. In other words, the materials presented "are straightforward and readily understood." *In re Kevork*,

25

634 F. Supp. 1002, 1008 (C.D. Cal. 1985), *aff'd*, 788 F.2d 566 (9th Cir. 1986); *see also Naser*, No. 22-CR-20504, ECF No. 221 at 16 (finding that the defendant's motion could be resolved based on the FISA materials provided by the Government "because they contain all the information necessary to address [the defendant's] motion").  Moreover, as in other cases, "[t]he determination of legality in this case is not complex." *Belfield*, 692 F.2d at 147; *Abu-Jihaad*, 531 F. Supp. 2d at 310; *United States v. Warsame*, 547 F. Supp. 2d 982, 987 (D. Minn. 2008) (finding that the "issues presented by the FISA applications are straightforward and uncontroversial"); *Thomson*, 752 F. Supp. at 79.  This Court, much like the aforementioned courts, is capable of reviewing the FISA materials *in camera* and *ex parte* and making the requisite legal determination without an adversarial hearing.

In addition to the specific harm that would result from the disclosure of the FISA materials in this case, which is detailed in the classified declaration of a high-ranking FBI official in support of the Declarations and Claims of Privilege of the Attorney General, the underlying rationale for non-disclosure is clear: "Congress has a legitimate interest in authorizing the Attorney General to invoke procedures designed to ensure that sensitive security information is not unnecessarily disseminated to *anyone* not involved in the surveillance operation in question." *United States v. Ott*, 827 F.2d 473, 477 (9th Cir. 1987) (emphasis in original);

26

*accord Amawi*, 531 F. Supp. 2d at 838 (finding that the FISA materials contained considerable "operational and technical information" the disclosure of which could adversely affect the Government's ability to obtain "useful foreign intelligence information"); *Isa*, 923 F.2d at 1306 (the Court's "study of the materials leaves no doubt that substantial national security interests required the *in camera, ex parte* review, and that the district court properly conducted such a review"); *United States v. Medunjanin*, No. 10-CR-19-1, 2012 WL 526428, at *9 (E.D.N.Y. Feb. 16, 2012) (finding persuasive the Government's argument that "unsealing the FISA materials in this case would provide the defense with unnecessary details of an extraordinarily sensitive anti-terrorism investigation"); *United States v. Islamic Am. Relief Agency*, No. 07-00087-CR-W-NKL, 2009 WL 5169536, at *3-4 (W.D. Mo. Dec. 21, 2009).

Confidentiality is critical to national security. "If potentially valuable intelligence sources" believe that the United States "will be unable to maintain the confidentiality of its relationship to them, many [of those sources] could well refuse to supply information." *CIA v. Sims*, 471 U.S. 159, 175 (1985); *see also Phillippi v. CIA*, 655 F.2d 1325, 1332-33 (D.C. Cir. 1981). When considering whether the disclosure of classified sources, methods, techniques, or information would harm the national security, federal courts have expressed a great reluctance to replace the considered judgment of Executive Branch officials charged with the

27

responsibility of weighing a variety of subtle and complex factors in determining whether the disclosure of information may lead to an unacceptable risk of compromising the intelligence gathering process, and determining whether foreign agents, spies, and terrorists are capable of piecing together a mosaic of information that, when revealed, could reasonably be expected to harm the national security of the United States. *See Sims*, 471 U.S. at 180; *Naser*, No. 22-CR-20504, ECF No. 221 at 13 ("[The Government] states that disclosure or an adversary hearing would harm national security. Under FISA, the Court cannot second-guess that representation." (citation omitted)); *Amawi*, 531 F. Supp. 2d at 837 (refusing to "second-guess" the Attorney General's declaration stating that disclosure or an adversary hearing would harm national security); *United States v. Yunis*, 867 F.2d 617, 623 (D.C. Cir. 1989) ("Things that did not make sense to the District Judge would make all too much sense to a foreign counter-intelligence specialist who could learn much about this nation's intelligence-gathering capabilities from what these documents revealed about sources and methods."); *Halperin v. CIA*, 629 F.2d 144, 150 (D.C. Cir. 1980) ("each individual piece of intelligence information, much like a piece of jigsaw puzzle, may aid in piecing together other bits of information even when the individual piece is not of obvious importance in itself"). An adversary hearing is not only unnecessary to aid the Court in the

28

straightforward task before it, but such a hearing would also create potential

dangers that courts have consistently sought to avoid.

Indeed, Congress enacted FISA's *in camera, ex parte* review procedures to

account for such risks in accommodating the judiciary's need to review any FISA

authorities that may be implicated in litigation against aggrieved persons.  As the

D.C. Circuit explained in *Belfield*:

> Congress recognized the need for the Executive to engage in and employ
> the fruits of clandestine surveillance without being constantly hamstrung
> by disclosure requirements.  The statute is meant to reconcile national
> intelligence and counterintelligence needs with constitutional principles
> in a way that is consistent with both national security and individual
> rights.  In FISA the privacy rights of individuals are ensured not through
> mandatory disclosure, but through its provisions for in-depth oversight
> of FISA surveillance by all three branches of government and by a
> statutory scheme that to a large degree centers on an expanded
> conception of minimization that differs from that which governs law-
> enforcement surveillance.

692 F.2d at 148 (internal quotation marks and citations omitted); *see also Stewart*,

590 F.3d at 128 ("FISA applications are likely to contain allegedly sensitive

information relating to perceived issues of national security. . . .  For this reason, *ex*

*parte, in camera* determination is to be the rule.") (quoting *Duggan*, 743 F.2d

at 77); *Daoud*, 755 F.3d at 483 ("Everyone recognizes that privacy is a legally

protectable interest, and it is not an interest of private individuals alone.  [FISA] is

an attempt to strike a balance between the interest in full openness of legal

proceedings and the interest in national security, which requires a degree of

29

secrecy concerning the government's efforts to protect the nation."); *ACLU Found. of So. Cal. v. Barr*, 952 F.2d 457, 465 (D.C. Cir. 1991) (citing *Belfield* for the proposition that 50 U.S.C. § 1806(f) "is an acceptable means of adjudicating the constitutional rights of persons who have been subjected to FISA surveillance")

### 2.    *In Camera, Ex Parte* Review Is Constitutional

The constitutionality of FISA's *in camera, ex parte* review provisions has been affirmed by every federal court that has considered the matter, including the U.S. Court of Appeals for the Sixth Circuit. *See United States v. Damrah*, 412 F.3d 618, 624 (6th Cir. 2005) ("FISA's requirement that the district court conduct an *ex parte, in camera* review of FISA materials does not deprive a defendant of due process."); *see also Stewart*, 590 F.3d at 126 (the Second Circuit concluding that "the procedures fashioned in FISA [are] a constitutionally adequate balancing of the individual's Fourth Amendment rights against the nation's need to obtain foreign intelligence information") (quoting *Duggan*, 743 F. 2d at 73); *Abu-Jihaad*, 630 F.3d at 117; *El-Mezain*, 664 F.3d at 567; *Ott*, 827 F.2d at 476-77 (FISA's review procedures do not deprive a defendant of due process); *Belfield*, 692 F.2d at 148-49; *ACLU Found. of So. Cal.*, 952 F.2d at 465; *Isa*, 923 F.2d at 1306 (upholding the district court's *in camera, ex parte* review as constitutional and stating that the process delineated under FISA "provides even more protection" than defendants receive in other contexts); *United States v. Benkahla*, 437 F. Supp.

2d 541, 554 (E.D. Va. 2006); *United States v. Megahey*, 553 F. Supp. 1180, 1194 (E.D.N.Y. 1982) ("*ex parte, in camera* procedures provided in 50 U.S.C. § 1806(f) are constitutionally sufficient to determine the lawfulness of the electronic surveillance at issue while safeguarding defendant's fourth amendment rights"); *United States v. Falvey*, 540 F. Supp. 1306, 1315-16 (E.D.N.Y. 1982) (a "massive body of pre-FISA case law of the Supreme Court, [the Second] Circuit and others" supports the conclusion that the legality of electronic surveillance should be determined on an *in camera*, *ex parte* basis).

In summary, FISA mandates a process by which the district court must conduct an initial *in camera*, *ex parte* review of FISA applications, orders, and related materials in order to determine whether the FISA information was lawfully acquired and whether the electronic surveillance and physical search were made in conformity with an order of authorization or approval. This *in camera*, *ex parte* review process is the rule in such cases and that procedure is constitutional. In this case, the Government has filed the required Attorney General affidavits invoking that procedure and declaring that disclosure or an adversary hearing would harm national security. Accordingly, an *in camera*, *ex parte* review by this Court is the appropriate venue in which to determine whether the FISA information was lawfully acquired and whether the electronic surveillance and physical search were made in conformity with an order of authorization or approval.

31

Finally, the Government notes that the defendants specifically request that this Court perform an *in camera*, *ex parte* review of the FISA materials: "Under 50 U.S.C. § 1806(f), the government may invoke an in camera, ex parte process for review of FISA materials. Under that process, if the Attorney General files an affidavit under oath that disclosure or an adversary hearing would harm the national security of the United States, then this Court reviews in camera and ex parte any materials relating to the surveillance as may be necessary to determine whether the surveillance of the aggrieved was lawfully authorized and conducted." (internal quotation marks omitted) (Ayob, ECF No. 39; ███████████████) The Government has prepared and submits the instant brief and related materials for this purpose.

## B. THE DISTRICT COURT'S SUBSTANTIVE REVIEW

In evaluating the legality of the FISA collection, a district court's review should determine: (1) whether the certification submitted by the Executive Branch in support of a FISA application was properly made; (2) whether the application established the probable cause showing required by FISA; and (3) whether the collection was properly minimized. *See Abu-Jihaad*, 630 F.3d at 130-31; *see also* 50 U.S.C. §§ 1806(f), 1825(g).

### 1.    Standard of Review of Probable Cause

Although federal courts are not in agreement as to whether the FISC's probable cause determination should be reviewed *de novo* or accorded due deference, the material under review here satisfies either standard of review. *See Omar*, 786 F. 3d at 1112 ("[W]e have no hesitation concluding that probable cause under FISA existed under any standard of review."); *Abu-Jihaad*, 630 F.3d at 130 ("Although the established standard of judicial review applicable to FISA warrants is deferential, the government's detailed and complete submissions in this case would easily allow it to clear a higher standard of review"). The Government respectfully submits that it is appropriate to accord due deference to the findings of the FISC, but notes that a number of courts, including district courts in the Sixth Circuit, have reviewed the FISC's probable cause determination *de novo*.[19] *See Naser*, No. 22-CR-20504, ECF No. 221 at 17 (applying a *de novo* standard of review to the FISA materials). While in the minority, other courts have afforded due deference to the findings of the FISC. *Abu-Jihaad*, 630 F.3d at 130; *accord*

---

[19] *See, e.g., United States v. Daher*, No. 18-20559, 2020 WL 7664789, at *3 (E.D. Mich. Dec. 24, 2020); *United States v. Mohammad*, 339 F. Supp. 3d 724, 736 (N.D. Ohio 2018); *United States v. Alwan*, No. 1:11-CR-13, 2012 WL 399154, at *8-10 (W.D. Ky. Feb. 7, 2012); *Warsame*, 547 F. Supp. 2d at 990 (citing *Illinois v. Gates*, 462 U.S. 213, 214 (1983)); *Rosen*, 447 F. Supp. 2d at 545; *United States v. Kashmiri*, No. 09-CR-830-4, 2010 WL 4705159, at *1 (N.D. Ill. Nov. 10, 2010). In each of these cases, the courts applied a *de novo* standard in reviewing the FISC's probable cause findings, and each court found the applications before it contained probable cause.

*United States v. Ahmed*, No. 1:06-CR-147, 2009 U.S. Dist. LEXIS 120007, at \*21-22 (N.D. Ga. Mar. 19, 2009) (FISC's "determination of probable cause should be given 'great deference' by the reviewing court") (citing *Gates*, 462 U.S. at 236); *Stewart*, 590 F.3d at 128; *Alimehmeti*, ECF No. 68 at 7; *United States v. Fishenko*, No. 12-CV-626 (SJ), 2014 WL 4804215, at \*3 (E.D.N.Y. Sept. 25, 2014); *cf. Medunjanin*, 2012 WL 526428, at \*6-7 (affording deferential review, but noting that such review is not superficial).

In the analogous area of criminal searches and surveillance, the law in the Sixth Circuit, as well as that in other federal circuits, accords great deference to a magistrate judge's probable cause determinations. *See, e.g.*, *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000); *see also United States v. Krupa*, 658 F.3d 1174, 1177 (9th Cir. 2011); *United States v. Smith*, 581 F.3d 692, 694 (8th Cir. 2009); *United States v. Joseph*, 709 F.3d 1082, 1093 (11th Cir. 2013) (citing *Gates*, 462 U.S. at 236); *United States v. Robinson*, 724 F.3d 878, 884 (7th Cir. 2013). It would thus be consistent for a court that is reviewing FISA-authorized electronic surveillance or physical search to adopt the same posture it would when reviewing the probable cause determination for a criminal search warrant issued pursuant to Rule 41 of the Federal Rules of Criminal Procedure. *See Ahmed*, 2009 U.S. Dist. LEXIS 120007, at \*21-22 (according the same deference to the FISC's probable cause determination as to a magistrate's criminal probable cause determination); *cf.*

34

*Cavanagh*, 807 F.2d at 790 (concluding that a FISA order can be considered a warrant since it is issued by a detached judicial officer and is based on a reasonable showing of probable cause).

### 2.    Probable Cause Standard Under FISA

As acknowledged in the defendants' motions, FISA requires a "probable cause determination [that] differs from the standard analysis this Court undertakes because it focuses on whether [the defendant] was an 'agent of a foreign power.'" (Ayob, ECF No. 39; ███████████████████████████) (quoting *Daher,* 2020 WL 7664789, at *4.)  More precisely, FISA requires a finding of probable cause that the target is a foreign power or an agent of a foreign power and that each facility or place at which the electronic surveillance or physical search is directed is, or is about to be, used, owned, possessed by, or is in transit to or from, a foreign power or an agent of a foreign power.  50 U.S.C. §§ 1805(a), 1824(a); *Abu-Jihaad*, 630 F.3d at 130.  It is this probable cause determination—not the standard determination applicable to criminal search warrants—that this Court must review.  *See Abu-Jihaad*, 630 F.3d at 130-31; *United States v. Turner*, 840 F.3d 336, 340-41 (7th Cir. 2016) (applying the FISA standard of probable cause rather than the probable cause in a criminal case); *Omar*, 786 F.3d at 1111 ("[R]ather than focusing on probable cause to believe that a person has committed a crime, the FISA standard focuses on the status of the target as a foreign power or

an agent of a foreign power.") (quoting *El-Mezain*, 664 F.3d at 564); *Duka*, 671 F.3d at 338; *Cavanagh*, 807 F.2d at 790 (citing *United States v. United States Dist. Court for Eastern Dist. of Mich. (Keith)*, 407 U.S. 297, 322 (1972)); *Alwan*, 2012 WL 399154, at *5 (explaining the probable cause standard applicable to FISA orders "is different than the probable cause standard applicable to a criminal arrest or search warrants").

Although the probable cause findings under FISA differ from the findings applicable to criminal search warrants, the FISA standard is no less constitutional. The Supreme Court has stated that "[d]ifferent standards may be compatible with the Fourth Amendment if they are reasonable both in relation to the legitimate need of the Government for intelligence information and the protected rights of our citizens." *Keith*, 407 U.S. at 322-23 (recognizing that domestic security surveillance "may involve different policy and practical considerations than the surveillance of 'ordinary crime'"). In *Keith*, the Supreme Court acknowledged that: (1) the "focus of . . . surveillance [in domestic security investigations] may be less precise than that directed against more conventional types of crime"; (2) unlike ordinary criminal investigations, "[t]he gathering of security intelligence is often long range and involves the interrelation of various sources and types of information"; and (3) the "exact targets of such surveillance may be more difficult to identify" than in surveillance operations of ordinary crimes under Title III of the

36

Omnibus Crime Control and Safe Streets Act of 1968, Title III, Pub. L. No. 90-351, 82 Stat. 197 (codified as amended at 18 U.S.C. §§ 2510-2522) (hereinafter "Title III"). *Id.* Although *Keith* was decided prior to FISA's enactment and addressed purely domestic security surveillance, the rationale underlying *Keith* applies *a fortiori* to foreign intelligence surveillance, where the Government's interest, at least from a national security perspective, would typically be more pronounced.

Moreover, FISA was enacted partly in response to *Keith*. In constructing FISA's framework, Congress addressed *Keith*'s question of whether departures from traditional Fourth Amendment procedures "are reasonable, both in relation to the legitimate need of Government for intelligence information and the protected rights of our citizens," and "concluded that such departures are reasonable." *See* S. Rep. No. 95-701, 95th Cong., 2d Sess., at 11-12 (1978), *reprinted in* 1978 U.S.C.C.A.N. 3973, 3980. Similarly, many courts—including the Sixth Circuit and the FISC of Review—have relied on *Keith* in holding that FISA collection conducted pursuant to a FISC order is reasonable under the Fourth Amendment. *See Damrah*, 412 F.3d at 625 (denying a defendant's claim that FISA's procedures violate the Fourth Amendment); *In re Sealed Case*, 310 F.3d 717, 738, 746 (FISA Ct. Rev. 2002) (finding that while many of FISA's requirements differ from those in Title III, few of those differences have constitutional relevance); *see also*

37

*Duggan*, 743 F.2d at 74 (holding that FISA does not violate the Fourth Amendment); *Ning Wen*, 477 F.3d at 898 (holding that FISA is constitutional despite using "a definition of 'probable cause' that does not depend on whether a domestic crime has been committed"); *Pelton*, 835 F.2d at 1075 (finding FISA's procedures compatible with the Fourth Amendment); *Cavanagh*, 807 F.2d at 790-91 (holding that FISA satisfies the Fourth Amendment requirements of probable cause and particularity); *Daher*, 2020 WL 7664789, at *4-5 (concluding a defendant's Fourth Amendment challenge was unsupported by prevailing case law); *Warsame*, 547 F. Supp. 2d at 993-94; *United States v. Mubayyid*, 521 F. Supp. 2d 125, 135-41 (D. Mass. 2007) (rejecting claim that FISA violates the Fourth Amendment's judicial review, probable cause, notice, and particularity requirements); *United States v. Marzook*, 435 F. Supp. 2d 778, 786 (N.D. Ill. 2006) ("Courts uniformly have held that FISA procedures satisfy the Fourth Amendment's reasonableness requirement"); *Falvey*, 540 F. Supp. at 1311-14 (finding that FISA procedures satisfy the Fourth Amendment's warrant requirement).

**[CLASSIFIED INFORMATION REDACTED]**

### 3.    Standard of Review for Executive Branch Certifications

The certification that FISA requires for an application to conduct electronic surveillance or physical search is "subject to only minimal scrutiny by the courts"

38

and "presumed valid." *Duggan*, 743 F.2d at 77 & n.6. In particular, "[t]he FISA Judge, in reviewing the application, is not to second-guess the executive branch official's certification that the objective of the surveillance is foreign intelligence information." *Id.* When an aggrieved person challenges FISC-approved surveillance or search before the district court, the "reviewing court is to have no greater authority to second-guess the executive branch's certifications than has the FISA Judge." *Id.*; *see also Naser*, No. 22-CR-20504, ECF No. 221 at 17-18 (finding that the review of the certifications in support of each FISA application need only be conducted with "minimal scrutiny" and with the understanding that they are "presumed valid" (citations omitted)).

For a FISA application targeting a non-United States person, "[t]he FISA Judge need only determine that the application contains all of the statements and certifications required by [FISA]." *Duggan*, 743 F.2d at 75. When a United States person is targeted, the FISC must also find that the certifications are "not clearly erroneous." *Id.* (citing 50 U.S.C. § 1805(a)); *see also Naser*, No. 22-CR-20504, ECF No. 221 at 18 (applying the clearly erroneous stanard). A "clearly erroneous" finding is established only when, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Islamic Am. Relief Agency*, 2009 WL 5169536, at *4 (W.D. Mo. Dec. 21, 2009) (assessing certifications for applications

39

targeting United States persons) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).[20]

### 4.     FISA Is Subject to the "Good Faith" Exception

Even if a district court were to determine that a particular application to the FISC failed to satisfy FISA's requirements, any evidence obtained or derived from FISC-approved electronic surveillance or physical search would nonetheless be admissible under the "good faith" exception to the exclusionary rule, recognized in *United States v. Leon*, 468 U.S. 897 (1984). Courts have found that *Leon*'s good-faith exception would apply to FISA-acquired evidence. *See, e.g., Ning Wen*, 477 F.3d at 898; *Ahmed*, 2009 U.S. Dist. Lexis 120007, at *25 n.8. Moreover, there is no indication here that the FISC failed to act in a neutral and detached manner, or that any assertion in a FISA application was deliberately or recklessly false, as might warrant exclusion of evidence obtained pursuant to a FISC order of approval. *See Leon*, 468 U.S. at 926. To the contrary, this Court's review of the FISA materials will confirm that the officials who applied for and implemented the FISA authorities at issue did so in good faith, and that the Government reasonably relied on the FISC's order(s) of approval in conducting electronic surveillance and physical search. Thus, even if the Court questions whether sufficient probable

---

[20] **[CLASSIFIED INFORMATION REDACTED]**

cause supported a FISC order, the information obtained pursuant to that order would be admissible under *Leon*'s good faith exception.

Lastly, consistent with its underlying rationale, a court should not impose the exclusionary rule to punish an officer who acts in objectively reasonable reliance on a duly-issued warrant or enacted statute. In *Illinois v. Krull*, 480 U.S. 340 (1987), the Supreme Court "ruled categorically that 'suppressing evidence obtained by an officer acting in objectively reasonable reliance on a statute' would not further the purposes of the exclusionary rule, even if that statute is later declared unconstitutional." *Duka*, 671 F.3d at 346 (quoting *Krull*, 480 U.S. at 349-50. The same is true for warrants that are later determined to be invalid. *See United States v. Helton,* 35 F.4th 511, 521 (6th Cir. 2022) (quoting *Leon* for the proposition "that if 'the evidence was obtained in objectively reasonable reliance' on the subsequently invalidated search warrant, however, it should not be suppressed"). "Because the rule 'is designed to deter police misconduct,' it applies only where it will 'alter the behavior of individual law enforcement officers or the policies of their departments.'" *Duka*, 671 F.3d at 346 (quoting *Leon*, 468 U.S. at 916-18). Here, the exclusion of FISA information would serve no such deterrent purpose. *See Davis v. United States*, 564 U.S. 229, 237 (2011); *United States v. Bin Laden*, 126 F. Supp. 2d 264, 282-84 (S.D.N.Y. 2000).

41

## IV. THE ELECTRONIC SURVEILLANCE AND PHYSICAL SEARCH AT ISSUE WERE LAWFULLY AUTHORIZED AND CONDUCTED

This section, in Parts A and B, first discusses the materials in the Sealed Appendix to demonstrate, in light of the standards of review described above, that the FISA authorities in this matter were lawfully *authorized*. In Part C, this section then addresses the Government's good faith compliance with proper minimization procedures and related requirements to demonstrate that the electronic surveillance and physical search at issue were lawfully *conducted*.

### A. THE FISA APPLICATION(S) SATISFIED FISA'S PROBABLE CAUSE STANDARD

[CLASSIFIED INFORMATION REDACTED]

1. [CLASSIFIED INFORMATION REDACTED]

[CLASSIFIED INFORMATION REDACTED]

2. [CLASSIFIED INFORMATION REDACTED]

[CLASSIFIED INFORMATION REDACTED]

a. [CLASSIFIED INFORMATION REDACTED]

[CLASSIFIED INFORMATION REDACTED]

b. [CLASSIFIED INFORMATION REDACTED]

[CLASSIFIED INFORMATION REDACTED]

3. [CLASSIFIED INFORMATION REDACTED]

[CLASSIFIED INFORMATION REDACTED]

42

      a.      [CLASSIFIED INFORMATION REDACTED]

[CLASSIFIED INFORMATION REDACTED]

      b.      [CLASSIFIED INFORMATION REDACTED]

[CLASSIFIED INFORMATION REDACTED]

      c.      [CLASSIFIED INFORMATION REDACTED]

[CLASSIFIED INFORMATION REDACTED]

**B.    THE CERTIFICATION(S) COMPLIED WITH FISA**

[CLASSIFIED INFORMATION REDACTED]

    **1.    Foreign Intelligence Information**

[CLASSIFIED INFORMATION REDACTED]

    **2.    "A Significant Purpose"**

[CLASSIFIED INFORMATION REDACTED]

    **3.    Information Not Reasonably Obtainable Through Normal Investigative Techniques**

[CLASSIFIED INFORMATION REDACTED]

**C.    THE ELECTRONIC SURVEILLANCE AND PHYSICAL SEARCH WERE CONDUCTED IN CONFORMITY WITH AN ORDER OF AUTHORIZATION OR APPROVAL**

[CLASSIFIED INFORMATION REDACTED]

    **1.    The Minimization Procedures**

[CLASSIFIED INFORMATION REDACTED]

FISA's legislative history and applicable case law demonstrate that the definitions of "minimization procedures" and "foreign intelligence information"

43

were intended to take into account the realities of collecting foreign intelligence, including that the activities of those engaged in clandestine intelligence gathering or international terrorism are often not obvious on their face. *See Rahman*, 861 F. Supp. at 252–53. The degree to which information is required to be minimized may vary given the specifics of a particular investigation, such that less minimization at acquisition is justified when "the investigation is focusing on what is thought to be a widespread conspiracy" and more extensive surveillance is necessary "to determine the precise scope of the enterprise." *In re Sealed Case*, 310 F.3d at 741; *see also Bin Laden*, 126 F. Supp. 2d at 286 (agreeing with the government that "more extensive monitoring and greater leeway in minimization efforts are permitted in a case like this given the world-wide, covert and diffuse nature of the international terrorist group(s) targeted"). Furthermore, the activities of foreign powers and their agents are often not obvious from an initial or cursory overhear of conversations. To the contrary, agents of foreign powers frequently engage in coded communications, compartmentalized operations, the use of false identities, and other practices designed to conceal the breadth and aim of their operations, organization, activities and plans. *See, e.g., United States v. Salameh*, 152 F.3d 88, 154 (2d Cir. 1998) (noting that two conspirators involved in the 1993 bombing of the World Trade Center in New York referred to the bomb plot as the "study" and to terrorist materials as "university papers"). As one court explained,

44

"[i]nnocuous-sounding conversations may in fact be signals of important activity; information on its face innocent when analyzed or considered with other information may become critical." *In re Kevork*, 634 F. Supp. at 1017 (quoting H.R. Rep. No. 95-1283, pt. 1, at 55 (1978)); *see also In re Sealed Case*, 310 F.3d at 740–41 (comparing minimization under FISA and Title III); *Thomson*, 752 F. Supp. at 81 (noting that it is permissible to retain and disseminate "bits and pieces" of information until the information's "full significance becomes apparent") (citing H.R. Rep. No. 95-1283, pt. 1, at 58).

Likewise, "individual items of information, not apparently significant when taken in isolation, may become highly significant when considered together over time." *Rahman*, 861 F. Supp. at 252–53 (citing H.R. Rep. No. 95-1283, pt. 1, at 55, 59). In addition, the government may require greater flexibility in the FISA context due to the likelihood that some communications involving foreign agents will be carried out in a foreign language (as happened here). *See, e.g., Mubayyid*, 521 F. Supp. 2d at 134 (upholding ten-year period for retention of FISA-acquired communications, including because the communications were in a foreign language). Basically, "courts have construed 'foreign intelligence information' broadly and sensibly allowed the government some latitude in its determination of what is foreign intelligence information." *Rosen*, 447 F. Supp. 2d at 551.

45

The nature of the foreign intelligence information sought also impacts implementation of the minimization procedures at the retention and dissemination stages. There is a legitimate need to conduct a thorough post-acquisition review of FISA information that involves a United States person who is acting as an agent of a foreign power. As Congress explained:

> It is "necessary" to identify anyone working with him in this network, feeding him information, or to whom he reports. Therefore, it is necessary to acquire, retain and disseminate information concerning all his contacts and acquaintances and his movements. Among his contacts and acquaintances, however, there are likely to be a large number of innocent persons. Yet, information concerning these persons must be retained at least until it is determined that they are not involved in the clandestine intelligence activities and may have to be disseminated in order to determine their innocence.

H.R. Rep. No. 95-1283, pt. 1, at 58. Indeed, as one court cautioned, when a United States person communicates with an agent of a foreign power, the government would be "remiss in meeting its foreign counterintelligence responsibilities" if it did not thoroughly "investigate such contacts and gather information to determine the nature of those activities." *Thomson*, 752 F. Supp. at 82. In light of these realities, Congress recognized that "no electronic surveillance can be so conducted that innocent conversations can be totally eliminated." *See* S. Rep. No. 95-701, at 39 (1978), *reprinted in* 1978 U.S.C.C.A.N. 3973, 4008 (quoting *United States v. Bynum,* 485 F.2d 490, 500 (2d Cir. 1973)). The Fourth Circuit reached the same conclusion in *Hammoud*, stating that the "mere fact that innocent conversations

46

were recorded, without more, does not establish that the government failed to appropriately minimize surveillance." 381 F.3d at 334.

Accordingly, in reviewing the adequacy of minimization efforts, the test to be applied is neither whether innocent conversations were intercepted, nor whether mistakes were made with respect to particular communications. Rather, as the United States Supreme Court stated in the context of Title III surveillance, there should be an "objective assessment of the [agents'] actions in light of the facts and circumstances confronting [them] at the time." *Scott v. United States*, 436 U.S. 128, 136 (1978). "The test of compliance is 'whether a good-faith effort to minimize was made.'" *Mubayyid*, 521 F. Supp. 2d at 135; *see also Hammoud*, 381 F.3d at 334 ("[t]he minimization requirement obligates the Government to make a good faith effort to minimize the acquisition and retention of irrelevant information"); S. Rep. No. 95-701, at 39-40, 1978 U.S.C.C.A.N., at 4008-09 (stating that the court's role is to determine whether "on the whole, the agents have shown a high regard for the right of privacy and have done all they reasonably could do to avoid unnecessary intrusion").

Moreover, as noted above, FISA expressly states that the Government is not required to minimize information that is "evidence of a crime," whether or not it is also foreign intelligence information. 50 U.S.C. §§ 1801(h)(3), 1821(4)(c); *see also United States v. Isa*, 923 F.2d 1300, 1304 (8th Cir. 1991) (noting that "[t]here

is no requirement that the 'crime' be related to foreign intelligence"). As a result, to the extent that certain communications of a United States person may be evidence of a crime or otherwise may establish an element of a substantive or conspiratorial offense, such communications need not be minimized. *See id.* at 1305.

Even if certain communications were not minimized in accordance with the SMPs, suppression would not be the appropriate remedy with respect to those communications that met the standard. As discussed above, absent evidence that there has been a complete disregard for the minimization procedures, the fact that some communications should have been minimized does not affect the admissibility of others that were properly acquired and retained. FISA's legislative history indicates that Congress intended only a limited sanction for errors of minimization:

> As the language of the bill makes clear, only that evidence which was obtained unlawfully or derived from information obtained unlawfully would be suppressed. If, for example, some information should have been minimized but was not, only that information should be suppressed; the other information obtained lawfully should not be suppressed.

H.R. Rep. No. 95-1283, pt. 1, at 93; *see also Medunjanin*, 2012 WL 526428, at *12 (disclosure and suppression not warranted where "failure to adhere to [the minimization] protocol was *de minimis*").

### 2. The FISA Information Was Appropriately Minimized
### [CLASSIFIED INFORMATION REDACTED]

Based upon this information, the Government respectfully submits that it lawfully conducted the FISA collection discussed herein. Consequently, for the reasons stated above, the Court should find that the FISA collection discussed herein was lawfully conducted under the minimization procedures approved by the FISC and applicable to the FISA collection discussed herein.

## V. THE COURT SHOULD REJECT THE DEFENDANTS' LEGAL ARGUMENTS

As noted above, the defendants' Motions ask this Court to: (1) compel the Government "to determine if the Attorney General will submit an affidavit attesting that disclosure of FISA applications, FISA orders, and other FISA materials in this case would harm national security;" (2) provide the defendants with "a copy of the Attorney General affidavit, if filed;" (3) conduct an *in camera*, *ex parte* review of the FISA materials to "determine whether the surveillance was lawfully authorized and appropriately conducted;" (4) disclose any FISA materials to defendant's counsel "because such disclosures are necessary to make an accurate determination of the legality of the surveillance;" and (5) "[s]uppress all information unlawfully acquired or surveillance conducted not in conformity with an order of authorization or approval," and suppress any fruits of unlawful

49

surveillance or searches. (Ayob, ECF No. 39; ███████████████████

████████ )

As explained above, the Government is filing herewith Attorney General affidavits stating that disclosure of the FISA materials or an adversary hearing would harm the national security of the United States. *See* 50 U.S.C. §§ 1806(f); 1825(g). The Attorney General affidavits are unclassified filings; and, ████████ ██████████████████████████████ the defendants will have access to them. The Government's filing of the affidavits thus satisfies the defendants' first two requests and triggers the exact mandatory *in camera, ex parte* review of the FISA materials that the defendants seek in their third request (*i.e.*, whether the electronic surveillance and physical search at issue were lawfully authorized and conducted), and which the Government agrees is statutorily required in this matter. *See id.* Thus, through these affidavits, this brief, and the Classified Appendix, the Government agrees to and satisfies the defendants' first three requests and enables this Court's *in camera* and *ex parte* review of the FISA materials. Such review, however, will reveal that neither suppression nor disclosure to the defendants is justified. Thus, this Court should deny the defendants' additional requests for suppression and disclosure as without merit.

50

**A.** **The Defendants Have Not Established Any Colorable Basis for the Court to Disclose the FISA Materials**

The defendants seek disclosure of the FISA materials under 50 U.S.C. § 1806(f) if this Court identifies irregularities during its *in camera, ex parte* review. (Ayob, ECF No. 39; ███████████████████████████████) However, the presence of "irregularities" is not the appropriate legal standard for the compelled disclosure of FISA materials, as courts may only disclose the FISA materials when "such disclosure is *necessary* to make an accurate determination of the legality of the surveillance." 50 U.S.C. § 1806(f) (emphasis added). Thus, there is only one lawful reason to disclose the FISA materials to defense counsel: if, after its review of those materials *in camera* and *ex parte*, this Court cannot determine the legality of the electronic surveillance, physical search, or both, without defense counsel's assistance. *See* 50 U.S.C. §§ 1806(f), 1825(g); *Daoud*, 755 F.3d at 482; *Duggan*, 743 F.2d at 78. This outcome is supported by the legislative history of 50 U.S.C. § 1806(f), which states: "The court may order disclos[ure] to [the defense] . . . only if it finds that such disclosure is necessary to make an accurate determination of the legality of the surveillance . . . Once a judicial determination is made that the surveillance was lawful, a motion for discovery . . . must be denied unless disclosure or discovery is required by due process." S. Rep. No. 95-701, at 64-65, 1978 U.S.C.C.A.N., at 4034.

51

Here, the defendants do not allege any particular irregularities in this case, nor do the defendants hypothesize how they could assist this Court if possible irregularities were found.  (Ayob, ECF No. 39; ███████████████████

███████)  Insofar as the defendants' Motions suggest that the FISA materials should be disclosed in order to allow them to later make a cognizable legal argument about the Court's need for their assistance, such circular argument should be rejected for two reasons.  First, as discussed above, disclosure of the FISA materials to defense counsel is authorized only after the Court conducts its review of FISA materials *in camera* and *ex parte*, and only if the Court is unable to determine the legality of the electronic surveillance, physical search, or both, without the assistance of defense counsel.  *See* 50 U.S.C. § 1806(f); *Naser*, No. 22-CR-20504, ECF No. 221 at 16; *Duggan*, 743 F.2d at 78; *Daoud*, 755 F.3d at 482; *In re Grand Jury Proceedings*, 347 F.3d at 203; *Rosen*, 447 F. Supp. 2d at 546.  As the *Belfield* court stated: "Congress was adamant, in enacting FISA, that [its] 'carefully drawn procedure[s]' are not to be bypassed."  692 F.2d at 146 (citing S. Rep. No. 95-701, at 63); *see also Naser*, No. 22-CR-20504, ECF No. 221 at 16 (finding that defendant's motion could be resolved solely based on the FISA materials because "they contained all the information necessary to address [defendant's] motion").  As this Court will see from its review, the FISA materials contain no "irregularities," and are presented in a well-organized and

52

straightforward manner that allows this Court to determine the lawfulness of the FISA collection without input from the defendants' counsel.

Second, the defendants are not entitled to the FISA materials to bolster their challenge to the lawfulness of the FISA authorities, as FISA's plain language precludes defense counsel from accessing the classified FISA materials to conduct a fishing expedition. In *Medunjanin*, the court noted that "[d]efense counsel . . . may not inspect the FISA dockets to construct a better argument for inspecting the FISA dockets. Such a circular exercise would be patently inconsistent with FISA . . . ." 2012 WL 526428, at *10. *See also Badia*, 827 F.2d at 1464 (rejecting the defendant's request for "disclosure of the FISA application, ostensibly so that he may review it for errors"); *United States v. Mohamud*, No. 3:10-CR-00475-KI-1, 2014 WL 2866749, at 32 (D. Or. June 24, 2014) ("Obviously it would be helpful to the court to have defense counsel review the materials prior to making arguments. Congress, however, did not put 'helpful' in the statute; it chose 'necessary.'"); *Mubayyid*, 521 F. Supp. 2d at 131.

### [CLASSIFIED INFORMATION REDACTED]

Therefore, the defendants fail to present any colorable basis for disclosure, as this Court can review and decide the legality of the FISA collection without defense counsel's assistance. Where, as here, defense participation is not necessary, FISA requires that the FISA materials remain protected from disclosure.

Congress' clear intention is that FISA materials should be reviewed *in camera* and *ex parte* and in a manner consistent with the realities of modern intelligence needs and investigative techniques. There is nothing extraordinary about this case that would prompt this Court to order the disclosure of highly sensitive and classified FISA materials. *See Rosen*, 447 F. Supp. 2d at 546 (the "exceptional nature of disclosure of FISA material is especially appropriate in light of the possibility that such disclosure might compromise the ability of the United States to gather foreign intelligence information effectively") (citing *Belfield*, 692 F.2d at 147). Accordingly, the Court should deny the defendants' requests for disclosure.

### B.  The Defendants Have Not Established Any Colorable Basis for the Court to Suppress the FISA Information

Similar to the requests for disclosure of the FISA materials, the defendants' requests to suppress the FISA information should be denied because they are based on speculation and a misunderstanding of the applicable legal standards. (Ayob, ECF No. 39; ███████████████████████████████ )

While the defendants' motions contemplate the suppression of all information unlawfully acquired or surveillance conducted, they did not request a *Franks* hearing. *Franks v. Delaware*, 438 U.S. 154 (1978). To merit a *Franks* hearing, a defendant must make a "concrete and substantial preliminary showing" that the affiant deliberately or recklessly included false statements, or failed to include material information, in the affidavit, and that the resulting

54

misrepresentation was essential to the finding of probable cause. *Franks*, 438 U.S. at 155-56. Here, the defendants have not suggested there are any false statements contained in any affidavit, nor will this Court's independent review reveal any such statements.

The defendants argue that the Court must answer "multiple" and "complicated" questions in its review of the FISA materials. (Ayob, ECF No. 39; ███████████████████████████) However, the defendants fail to allege any particular grounds to believe that the electronic surveillance and physical search *at issue in this case* acquired information unlawfully or that they were not conducted in conformity with the orders of the FISC. Mere speculation is not sufficient to support a motion to suppress. *See* 50 U.S.C. §§ 1806(g), 1825(h) (requiring a specific finding that the electronic surveillance or physical search at issue was either "not lawfully authorized or conducted," or both). As explained below, when reviewed under the applicable legal standards, the Court's *in camera*, *ex parte* review of the FISA materials will demonstrate that the electronic surveillance and physical search at issue were lawfully authorized and conducted, making the defendants' requested relief of suppression of the FISA information unavailable.

1. **The Government Has Satisfied the Applicable "Significant Purpose" Standard**

As an initial matter, the defendants' Motions ask the Court to apply the wrong legal standard when considering the purpose of the FISA applications. The defendants seem to assert that this Court must determine whether the "primary purpose" of the surveillance was domestic criminal activity, which is not authorized by FISA. (Ayob, ECF No. 39; █████████████████████

███████ ) This "primary purpose" framing is incorrect. As part of the USA PATRIOT Act, Congress amended FISA to require that an Executive Branch official certify that "a significant purpose" of the requested surveillance was to obtain foreign intelligence information. 50 U.S.C. § 1804(a)(6)(B). The defendants do not challenge the constitutionality of the "significant purpose" standard, but rather simply misstate the applicable standard even though it has been repeatedly upheld, including as recently as March 2025 by this District Court. *See Naser*, No. 22-CR-20504, ECF No. 221 at 17. Additionally, in another district court in the Sixth Circuit, the court rejected the defendants' claim that decisions upholding the constitutionality of the "significant purpose" test should be revisited in light of public disclosures regarding Government surveillance programs. *See Mohammad*, 339 F. Supp. 3d at 753. The court ruled that the Sixth Circuit's decision in *Damrah* continued to be controlling precedent and foreclosed the defendants' Fourth Amendment challenge. *See* 339 F. Supp. 3d at 739 (citing

56

*Damrah*, 412 F.3d at 625); *see also Naser*, No. 22-CR-20504, ECF No. 221 at 17 (holding the significant purpose standard and its probable cause and particularly requirements comply with the Fourth Amendment).

Even if the defendants' Motions were construed as a constitutional challenge to the current "significant purpose" standard, every court that has addressed this issue has found the significant purpose test to be reasonable under the Fourth Amendment. *See, e.g., Naser*, No. 22-CR-20504, ECF No. 221 at 17; *see also Damrah*, 412 F.3d at 625 (concluding that a defendant's constitutional challenge to FISA's procedures "lack[ed] merit, as FISA has uniformly been held to be consistent with the Fourth Amendment"); *Duka*, 671 F.3d at 343 ("We agree with our sister courts of appeals and the Foreign Intelligence Surveillance Court of Review that the amended FISA's 'significant purpose' standard is reasonable under the Fourth Amendment."); *Abu-Jihaad*, 630 F.3d at 131 ("[W]e identify no constitutional infirmity in Congress's decision to allow FISA warrants to issue on certification of a 'significant purpose' to obtain foreign intelligence information . . . ."); *Ning Wen*, 477 F.3d at 897; *In re Sealed Case*, 310 F.3d at 746; *Mubayyid*, 521 F. Supp. 2d at 139; *Marzook*, 435 F. Supp. 2d at 786; *Benkahla*, 437 F. Supp. 2d at 554. Moreover, even the more recent authorities cited in the defendants' Motions confirm the application of the "significant purpose" standard. (Ayob, ECF No. 39; ████████████████████████ (citing *Daher*, 2020

57

WL 7664789, at *3) (explaining that "[t]he certification is used to ensure that a significant purpose of the surveillance or search is to obtain foreign intelligence information").); *United States v. Mahamud*, 838 F. Supp. 2d 881, 888 (D. Minn. 2012) ("Based on the applicable law, the Court is satisfied that FISA's significant purpose requirement is consistent with the Fourth Amendment's protections against unreasonable searches and seizures."); *Warsame*, 547 F. Supp. 2d at 994-95 (although expressing constitutional concerns with the significant purpose standard, the court nonetheless acknowledged the statutory change in standard and upheld its constitutionality as applied to the case before it).

**[CLASSIFIED INFORMATION REDACTED]**

### 2. The Government Has Satisfied the Certification Requirements and Normal Investigative Techniques Standards

The defendants' Motions correctly state that the Court must assess whether the FISA application(s) at issue included "a certification that the purpose of the requested surveillance is the gathering of foreign intelligence information and a detailed description of the nature of the information sought." (Ayob, ECF No. 39; ███████████████████████████████████ (quoting *United States v. Johnson*, 952 F.2d 565, 572 (1st Cit. 1991) (emphasis omitted).) The defendants also correctly assert that the Government's FISA application(s) must certify that the information sought through the FISA process could not "reasonably be obtained by

normal investigative techniques." *Id.* (citing 50 U.S.C. § 1823). This is all true, and as the Court's review of the FISA application(s) in this matter will demonstrate, the application(s) at issue contained each of these certifications.

FISA requires that the application must contain all required "statements and certifications." 50 U.S.C. § 1805(a)(4). As explained above, *see supra* Section IV.B., and as the Court's *in camera, ex parte* review will bear out, the FISA applications in this case contained each certification required. The application and certification in each of the dockets at issue presented the foreign intelligence objectives of the electronic surveillance and physical search sought, which should be "subjected to only minimal scrutiny by the courts," and which "carries a strong presumption of veracity and regularity in a reviewing court." *Daher*, 2020 WL 7664789, at *3 (quoting *Mohammad*, 339 F. Supp. 3d at 736); *see also Naser*, No. 22-CR-20504, ECF No. 221 at 17. Certifications submitted in support of a FISA application should be "presumed valid," and neither the FISC nor a reviewing district court should "second-guess the executive branch official's certification that the objective of the surveillance is foreign intelligence information." *Duggan*, 743 F.2d at 77 & n.6; *see also Naser*, No. 22-CR-20504, ECF No. 221 at 18; *Turner*, 840 F.3d at 342. In reviewing the certifications, a district court should apply the same standards as the FISC. *Duggan*, 743 F.2d at 75; *see also id.* at 77; *Turner*, 840 F.3d at 342; *Badia*, 827 F.2d at 1463. First,

the district court should ensure that the FISA application contains all of the statements and certifications required by FISA. *Duggan*, 743 F.2d at 75; *see also id.* at 77; *Turner*, 840 F.3d at 342; *Badia*, 827 F.2d at 1463; *United States v. Mihalik*, No. 11-CR-833(A), ECF. No. 108, at 2 (C.D. Cal., Oct. 3, 2012) (Minute Order Denying Defendant's Motion to Suppress FISA-Derived Evidence). Second, in the case where the targets are United States persons, the district court should also ensure that each certification is not "clearly erroneous." *United States v. Campa*, 529 F.3d 980, 994 (11th Cir. 2008); *Duggan*, 743 F.2d at 77; *Kashmiri*, 2010 WL 4705159, at *2. A "clearly erroneous"[21] finding is established only when "although there is evidence to support it, the reviewing court on the [basis of the] entire evidence is left with the definite and firm conviction that a mistake has been committed." *U.S. Gypsum Co.*, 333 U.S. at 395; *United States v. Garcia*, 413 F.3d 201, 222 (2d Cir. 2005); *Islamic Am. Relief Agency*, 2009 WL 5169536, at *4 (identifying "clearly erroneous" standard of review for FISA certifications); *see also Naser*, No. 22-CR-20504, ECF No. 221 at 18.

**[CLASSIFIED INFORMATION REDACTED]**

---

[21] **[CLASSIFIED INFORMATION REDACTED]**

### 3.     The Government Satisfied the Probable Cause Standard [CLASSIFIED INFORMATION REDACTED]

"Probable cause is more than a bare suspicion, but less than absolute certainty," and in making the probable cause determination, FISA permits a judge to "consider past activities of the target, as well as facts and circumstances relating to current or future activities of the target." *Rosen*, 447 F. Supp. 2d at 549 (quoting *Mason v. Godinez*, 47 F.3d 852, 855 (7th Cir. 1995), 50 U.S.C. § 1805(b). Furthermore, the FISA probable cause standard "does not necessarily require a showing of an imminent violation of criminal law" because Congress clearly intended a different showing of probable cause for these activities than that applicable to ordinary cases. *Rosen*, 447 F. Supp. 2d at 549 (quoting *In re Sealed Case*, 310 F.3d at 738).

Although some federal circuits have afforded due deference to the probable cause determinations of the FISC, the Sixth Circuit has not resolved whether the FISC's probable cause determinations are reviewed with due deference or *de novo*, and at least some district courts in this circuit have proceeded under a *de novo* review. *See Naser*, No. 22-CR-20504, ECF No. 221 at 17 (applying the *de novo* standard); *see also Daher*, 2020 WL 7664789, at *3-4 (finding sufficient probable cause under a *de novo* review); *Mohammad*, 339 F. Supp. 3d at 736, 740 (affirming the FISC's probable cause determination under a *de novo* review); *but see Abu-*

*Jihaad*, 630 F.3d at 130; *Stewart*, 590 F.3d at 128; *cf. Medunjanin*, 2012 WL 526428, at *6-7 (affording deferential review, but noting that such review is not superficial); *accord Ahmed*, 2009 U.S. Dist. LEXIS 120007, at *21-22 (FISC's "determination of probable cause should be given 'great deference' by the reviewing court") (citing *Gates*, 462 U.S. at 236).

**[CLASSIFIED INFORMATION REDACTED]**

Moreover, to the extent that the defendants' state that FISA "is not to be used as an end-run around the Fourth Amendment's prohibition of warrantless searches" is construed as a constitutional challenge to FISA's probable cause standard, this challenge is unpersuasive. (Ayob, ECF No. 39; ███████████ ███████████████████ ) As discussed in detail above, *see supra* Section III.B.2., the probable cause threshold that the Government must satisfy before receiving authorization to conduct electronic surveillance and physical search under FISA complies with the Fourth Amendment's reasonableness standard. Arguments that FISA's different probable cause standard violates the Fourth Amendment have been uniformly rejected by federal courts. *See, e.g., Abu-Jihaad*, 630 F.3d at 120 (listing sixteen cases that have ruled FISA does not violate the Fourth Amendment).

### 4.   The Government Has Satisfied the Particularity Requirement

The defendants' Motions also state that FISA "demands particularity" in the Government's showing that "'each of the facilities, places, premises, or property at which the electronic surveillance or physical search was directed was, or was about to be owned, used, possessed by, or was in transit to or from [the defendant].'" (Ayob, ECF No. 39; ████████████████████████████ (quoting *Daher*, 2020 WL 7664789, at *4).)  More precisely, FISA requires, among other things, a finding of probable cause to believe that each of the facilities or places at which the electronic surveillance is directed is being used, or about to be used by a foreign power or an agent of a foreign power; and each of the premises or property to be physically searched was, or was about to be, owned, used, possessed by, or was in transit to or from, a foreign power or an agent of a foreign power.  *See* 50 U.S.C. §§ 1805(a)(2)(B), 1824(a)(2)(B).  Again, without alleging specific error in the particularity of the FISC's probable cause determinations, the defendants simply characterize this review as a "complicated" question.  (Ayob, ECF No. 39;

████████████████████████████ )

**[CLASSIFIED INFORMATION REDACTED]**

63

**5.     The Court Should Not Second-Guess Whether the Need for Secrecy Still Exists**

Beyond arguing that disclosure of FISA materials to the defendants would assist the Court, the defendants urge the Court to engage in a "mandatory" process of determining whether the need for secrecy asserted by the Attorney General, based on a classified declaration of an FBI Assistant Director, still exists. (Ayob, ECF No. 39; ██████████████████████████ (asserting that "this Court must determine whether that need for secrecy still exists").) This second-guessing of the Government's national security needs is contrary to the language of FISA and *Warsame*, which the defendants cite as support. First, the plain language of FISA does not invite, much less require, a district court to validate the continued need for secrecy to protect the national security of the United States. To the contrary, once the Attorney General, as defined by 50 U.S.C. § 1801(g), "files an affidavit under oath that disclosure or any adversary hearing would harm the national security of the United States," FISA directs the *in camera, ex parte* review of the FISA materials without prior disclosure to the aggrieved party. 50 U.S.C. §§ 1806(f), 1825(g). As discussed above, *see supra* section V.A., FISA contemplates only two instances where post-review disclosure is permitted: (1) the reviewing court, if otherwise unable to determine the legality of the FISA collection, *may disclose* under appropriate safeguards *only those portions* of the FISA materials *necessary* for the aggrieved party to render the required assistance;

64

and (2) the reviewing court *must* permit disclosure "to the extent that due process requires discovery or disclosure[,]" which courts have construed *narrowly* to mean as required under *Brady v. Maryland*, 373 U.S. 83 (1963). 50 U.S.C. §§ 1806(f)-(g), 1825(g)-(h); *see Mohammad*, 339 F. Supp. 3d at 737. Contrary to the defendants' suggestions, neither avenue for disclosure provided by FISA allows for disclosure in the event a reviewing court holds a contrary view of the potential harm to national security than the Attorney General under 50 U.S.C. § 1801(g).

Second, the *Warsame* court treated "the filing of an Attorney General affidavit" as "trigger[ing] an *in camera, ex parte* procedure . . . ." 547 F. Supp. 2d at 987. Once triggered, the court engages in a determination whether the FISA collection before it was lawfully authorized and conducted—it does not engage in a process of validating or reviewing the substance of an Attorney General affidavit as it pertains to the continued need for secrecy to protect the national security of the United States.[22] To the extent that the *Warsame* court discussed the substance

_____

[22] As the Government discussed at length above, *see supra* section III.B.1, courts have traditionally afforded due deference to the Attorney General's affidavit concerning the potential harm to the national security of the United States from the disclosure of FISA materials. Similarly, courts have afforded due deference to the Government's assertions regarding the need to protect classified national security information. *See United States v. Husayn*, 595 U.S. 195, 142 S.Ct. 959, 967 (2022) (explaining in the context of the state secrets privilege that while courts cannot abdicate their proper role concerning the evidence in a case, "[n]onetheless, in assessing the Government's claim that disclosure may harm national security, courts must exercise the traditional 'reluctan[ce] to intrude upon the authority of

of the Attorney General affidavit, it did so in the context of a due process challenge to the constitutionality of the FISA proceedings. *Id.* at 988-89. The defendants have articulated no such challenge to the constitutionality of the FISA process, and to the extent the defendants' Motions raise such a challenge, the Government addressed the constitutionality of the FISA process above, *see supra* sections III.B.2 and V.B.1.

## VI.   CONCLUSION: THERE IS NO BASIS FOR THE COURT TO DISCLOSE THE FISA MATERIALS OR SUPPRESS THE FISA INFORMATION

Based on the foregoing analysis, the Government respectfully submits that the Court must conduct an *in camera*, *ex parte* review of the FISA materials and the Government's classified submission. The Government further submits that, following such review, this Court should: (1) find that disclosure of the FISA materials and the Government's classified submissions to the defendants are not authorized because the Court is able to make an accurate determination of the legality of the surveillance and searches without disclosure; (2) find that the electronic surveillance and physical search at issue were both lawfully authorized and conducted in compliance with FISA; (3) hold that the fruits of the electronic

---

the Executive in military and national security affairs'") (quoting *Dep't of Navy v. Egan*, 484 U.S. 518, 530 (1988)).

66

surveillance and physical search should not be suppressed; and (4) order that the

FISA materials and the Government's classified submissions be maintained under

seal by the Classified Information Security Officer or his or her designee.[23]

Respectfully submitted,

Jerome F. Gorgon Jr.
United States Attorney

/s/
Hank Moon
Erin L. Ramamurthy
Assistant United States Attorneys

/s/
John Cella
Trial Attorney
National Security Division

Date:  April 6, 2026

---

[23] A district court order granting motions or requests under 50 U.S.C. §§ 1806(g) or 1825(h), a decision that electronic surveillance or physical search was not lawfully authorized or conducted, and an order requiring the disclosure of FISA materials are each a final order for purposes of appeal.  *See* 50 U.S.C. §§ 1806(h), 1825(i).  Should the Court conclude that disclosure of any item within any of the FISA materials or suppression of any FISA-obtained or  -derived information may be required, given the significant national security consequences that would result from such disclosure or suppression, the Government would expect to pursue an appeal.  Accordingly, the Government respectfully requests the Court stay any such order pending an appeal by the United States of that order.