UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff

v.

Case No. 25-cr-20842
HON. MARK A. GOLDSMITH

D-1 MOHMED ALI,
D-2 MAJED MAHMOUD
D-3 AYOB NASSER,

Defendants.
______________________________________/

**OPINION & ORDER DENYING DEFENDANT AYOB NASSER'S MOTION FOR DISCLOSURE AND SUPPRESS FISA MATERIALS (Dkt. 39)**

Before the Court is Defendant Ayob Nasser's motion for disclosure and to suppress FISA [Foreign Intelligence Surveillance Act] materials (Dkt. 39). Defendants Mohmed Ali and Majed Mahmoud joined Nasser's motion (Dkts. 49, 50). For the reasons that follow, the Court denies the motion.[1]

## I. BACKGROUND

The Government's indictment charges Ali, Mahmoud, and Nasser with one count of conspiracy to provide material support or resources to a designated foreign terrorist organization in violation of 18 U.S.C. § 2339B and one count of conspiracy to receive and transfer firearms and ammunition knowing that such firearms and ammunition would be used to commit a federal crime of terrorism in violation of 18 U.S.C. § 924(h). Indictment (Dkt. 36).

[1] In addition to Nasser's motion for disclosure and to suppress the FISA materials, the briefing includes the Government's unclassified memorandum in opposition to the Defendants' motion to disclose and suppress FISA materials (Dkt. 97). Attached to the Government's memorandum is a Declaration and Claim of Privilege of the Attorney General. Eisenberg Decl. at PageID.526–529 (Dkt. 97-1).

The Government provided notice of its intent to use as evidence or for other purposes Foreign Intelligence Surveillance Act (FISA) information, pursuant to 50 U.S.C. § 1806(c). See Notice (Dkt. 24). The Government's notice explained that it "intends to offer into evidence, or otherwise use or disclose in any proceedings in this matter, information obtained or derived from electronic surveillance conducted pursuant to the Foreign Intelligence Surveillance Act of 1978." Id. at PageID.103. Nasser filed the instant motion for disclosure and to suppress the FISA materials.

Nasser's motion asks the Court to: (i) "[c]ompel the government to determine if the Attorney General will submit an affidavit attesting that disclosure of FISA applications, orders, and other FISA materials…would harm national security[;]" (ii) provide a copy of the affidavit (iii) conduct an ex parte review of the FISA materials to determine whether the surveillance was lawfully obtained and conducted; (iv) disclose all FISA materials to Defendants because "disclosure is necessary to make an accurate determination of the legality of the surveillance[;]" and (v) "suppress all information unlawfully acquired or surveillance conducted not in conformity with an order of authorization or approval, and suppress any fruits of unlawfully [sic] surveillance or searches." Nasser Mot. at PageID.222–223.

**A. Overview of FISA**

The Foreign Intelligence Surveillance Act of 1978 outlines the means by which the Government may conduct electronic and/or physical surveillance of a "foreign power"[2] or an

[2] "Foreign Power" is defined as:

(1) a foreign government or any component thereof, whether or not recognized by the United States;
(2) a faction of a foreign nation or nations, not substantially composed of United States persons;

(3) an entity that is openly acknowledged by a foreign government or governments to be directed and controlled by such foreign government or governments;
(4) a group engaged in international terrorism or activities in preparation therefor;
(5) a foreign-based political organization, not substantially composed of United States persons;
(6) an entity that is directed and controlled by a foreign government or governments; or
(7) an entity not substantially composed of United States persons that is engaged in the international proliferation of weapons of mass destruction.

50 U.S.C. §§ 1801(a)(1)–(7); 50 U.S.C. § 1821(1).

"agent of a foreign power"[3] after a high-ranking official certifies that a "significant purpose" of the search is to gather "foreign intelligence information."[4] 50 U.S.C. §§ 1801(a)–(b), (e); 1821(1); 1804(a)(6)(B); 1823(a)(6)(B). Under the statute, "foreign intelligence information" means:

---

[3] "Agent of a Foreign Power" is defined as:

(1) any person other than a United States person, who—
(A) acts in the United States as an officer or employee of a foreign power, or as a member of a foreign power as defined in subsection (a)(4), irrespective of whether the person is inside the United States;

(B) acts for or on behalf of a foreign power which engages in clandestine intelligence activities in the United States contrary to the interests of the United States, when the circumstances indicate that such person may engage in such activities, or when such person knowingly aids or abets any person in the conduct of such activities or knowingly conspires with any person to engage in such activities;

(D) engages in the international proliferation of weapons of mass destruction, or activities in preparation therefor; or

(E) engages in the international proliferation of weapons of mass destruction, or activities in preparation therefor, for or on behalf of a foreign power, or knowingly aids or abets any person in the conduct of such proliferation or activities in preparation therefor, or knowingly conspires with any person to engage in such proliferation or activities in preparation therefor; or

(2) any person who—
(A) knowingly engages in clandestine intelligence gathering activities for or on behalf of a foreign power, which activities involve or may involve a violation of the criminal statutes of the United States;

(B) pursuant to the direction of an intelligence service or network of a foreign power, knowingly engages in any other clandestine intelligence activities for or on behalf of such foreign power, which activities involve or are about to involve a violation of the criminal statutes of the United States;

(C) knowingly engages in sabotage or international terrorism, or activities that are in preparation therefor, for or on behalf of a foreign power;

(D) knowingly enters the United States under a false or fraudulent identity for or on behalf of a foreign power or, while in the United States, knowingly assumes a false or fraudulent identity for or on behalf of a foreign power; or

(1) information that relates to, and if concerning a United States person is necessary to, the ability of the United States to protect against—

(A) actual or potential attack or other grave hostile acts of a foreign power or an agent of a foreign power;

(B) sabotage, international terrorism, or the international proliferation of weapons of mass destruction by a foreign power or an agent of a foreign power;

(C) clandestine intelligence activities by an intelligence service or network of a foreign power or by an agent of a foreign power; or

(D) international production, distribution, or financing of illicit synthetic drugs, opioids, cocaine, or other drugs driving overdose deaths, or precursors of any aforementioned; or

(2) information with respect to a foreign power or foreign territory that relates to, and if concerning a United States person is necessary to—

(A) the national defense or the security of the United States; or

(B) the conduct of the foreign affairs of the United States.

50 U.S.C. §§ 1801(e); § 1821(1).

The statute also specifies that no U.S. person may be considered a foreign power or an agent of a foreign power based solely on First Amendment protected activities. §§ 1805(a)(2)(A), 1824(a)(2)(A).

### 1. Emergency Authorization

In an emergency, FISA authorizes the Government to conduct electronic surveillance and physical searches if the Attorney General:

---

(E) knowingly aids or abets any person in the conduct of activities described in subparagraph (A), (B), or (C) or knowingly conspires with any person to engage in activities described in subparagraph (A), (B), or (C).

50 U.S.C. §§ 1801(b); 1821(1).

[4] The FISA statute is divided into two categories (i) electronic surveillance, 50 U.S.C. §§ 1801–1813 and (ii) physical searches, 50 U.S.C. §§ 1821–1829. The Court will cite both provisions.

(A) reasonably determines that an emergency situation exists with respect to the employment of electronic surveillance to obtain foreign intelligence information before an order authorizing such surveillance can with due diligence be obtained;

(B) reasonably determines that the factual basis for the issuance of an order under this subchapter to approve such electronic surveillance exists;

(C) informs, either personally or through a designee, a judge having jurisdiction under section 1803 of this title at the time of such authorization that the decision has been made to employ emergency electronic surveillance; and

(D) makes an application in accordance with this subchapter to a judge having jurisdiction under section 1803 of this title as soon as practicable, but not later than 7 days after the Attorney General authorizes such surveillance [or physical search].

§ 1805(e)(1); 1824(e)(1).

**2. FISA Application**

Absent an exigency, before the Government can conduct electronic surveillance or a physical search on a U.S. person under FISA, the Government must obtain an order from a Foreign Intelligence Surveillance Court (FISC) judge. 50 U.S.C. §§ 1804(a); 1823(a). To obtain an order, the Government must submit an application to the FISC. Id. The application must contain certain information including:

(1) the identity of the [f]ederal officer making the application;

(2) the identity, if known, or a description of the specific target of the electronic surveillance;

(3) a sworn statement by the applicant to establish probable cause that the target of the electronic surveillance is a foreign power or an agent of a foreign power, and that each of the facilities or places at which the electronic surveillance is directed is being used, or is about to be used, by a foreign power or an agent of a foreign power;

(4) a statement of the proposed minimization procedures;[5]

---

[5] The minimization procedures must be:

> reasonably designed in light of the purpose and technique of the particular surveillance [or physical search], to minimize the acquisition and retention, and prohibit the dissemination, of nonpublicly available information concerning

(5) a description of the nature of the information sought and the type of communications or activities to be subjected to the surveillance;

(6) a certification by a high-ranking Government official;

(7) summary of the manner or means which by the electronic surveillance will be effected and a statement whether physical entry is required to effect the physical surveillance;

(8) A statement of the facts concerning all previous FISA applications involving any of the persons, facilities, or places specified in this application, and any actions taken on each previous application; and

(9) The proposed duration of the surveillance.

50 U.S.C. §§ 1804(a)(1)–(13).

An application to conduct physical surveillance must contain similar information to that of an application to conduct electronic surveillance. 50 U.S.C. §§ 1823(a)(1)–(11). It must also contain a statement that the "premises or property to be searched contains foreign intelligence information" and that each "premises or property to be searched is or is about to be owned, used, possessed by, or is in transit to or from" the target. Id. §§ 1823(a)(3)(B), (C).

### i. Probable Cause Standard

As the statute states, to establish probable cause under FISA, the Government must show that the target of the surveillance or search is a foreign power or agent of a foreign power and that the facilities or property subject to the surveillance or search is or is about to be owned, used,

---

unconsenting United States persons consistent with the need of the United States to obtain, produce, and disseminate foreign intelligence information.

50 U.S.C. §§ 1801(h)(1), 1821(4)(A).

Minimization procedures also include "procedures that allow for the retention and dissemination of information that is evidence of a crime which has been, is being, or is about to be committed and that is to be retained or disseminated for law enforcement purposes." Id. §§ 1801(h)(3), 1821(4)(c).

possessed, or is in transit to or from a foreign power or agent of a foreign power. 50 U.S.C. §§ 1805(a)(2) and 1824(a)(2). In determining whether probable cause exists, FISA allows a judge to "consider past activities of the target, as well as facts and circumstances relating to current or future activities of the target." 50 U.S.C. §§ 1805(b), 1824(b).

This standard "is different from the standard in the typical criminal case because, rather than focusing on probable cause to believe that a person has committed a crime, the FISA standard focuses on the status of the target as a foreign power or an agent of a foreign power." United States v. El-Mezain, 664 F.3d 467, 564 (5th Cir. 2011). Despite being different than the traditional criminal probable cause standard under the Fourth Amendment, courts have consistently upheld FISA's procedures as reasonable under the Fourth Amendment. See e.g., United States v. Damrah, 412 F.3d 618, 625 (6th Cir. 2005) (rejecting defendant's argument that the "procedures dictated by FISA violate the Fourth Amendment" because "FISA has uniformly been held to be consistent with the Fourth Amendment."); In re Sealed Case, 310 F.3d 717, 738, 746 (F.I.S.C.R. 2002) (holding that FISA "is constitutional because the surveillances it authorizes is reasonable."); United States v. Duggan, 743 F.2d 59, 74 (2d Cir. 1984) (finding that FISA probable cause standard does not violate the Fourth Amendment because it "provide[s] an appropriate balance between the individual's interest in privacy and the government's need to obtain foreign intelligence information").

The Court reviews the FISA materials' probable cause determination de novo. See United States v. Nasser, No. 22-20504 at *PageID.2719 (E.D. Mich. Mar. 4, 2025); United States v. Daher, No. 18-20559, 2020 WL 7664789, at *3 (E.D Mich. Dec. 24, 2020).

**3. FISC Orders**

After the application is approved by the Attorney General, it is submitted to the FISC. §§ 1804(a); 1823(a). The FISC judge then reviews the application and may grant the order if the judge finds that the application:

(1) Has been made by a federal officer and approved by the Attorney General;

(2) There is probable cause to believe that the surveillance target is a foreign power or an agent of a foreign power and each of the facilities or places at which the surveillance is directed is being used or is about to be used by a foreign power or an agent of a foreign power;

(3) The proposed minimization procedures meet the definition of minimization procedures under 50 U.S.C. § 1801(h) or 50 U.S.C. § 1821(4);

(4) The application contains all the statements and certifications required under §1804 or § 1823; and if the target is a U.S. person, the certifications are not clearly erroneous.

50 U.S.C. §§ 1805(a)(1)–(4); 1824(a)(1)–(4).

If the FISC makes these findings, it issues an ex parte order authorizing electronic and/or physical surveillance as described in the application. §§ 1805(a); 1824(a). The order must:

(1) specify—

(A) the identity if known, or description of specific target of the [collection];

(B) the nature and location of each of the facilities or places at which the electronic surveillance will be directed, if known;

(C) the type of information sought to be acquired and the type of communications or activities to be subjected to the surveillance;

(D) the means by which the electronic surveillance will be effected and whether physical entry will be used to effect the surveillance; and

(E) the period of time during which the electronic surveillance is approved.

(2) direct—

(A) minimization procedures be followed . . . .

Id. §§ 1805(c)(1), (2)(A), 1824(c)(1), (2)(A).

FISA surveillance of U.S. persons can last for ninety days, 50 U.S.C. §§ 1805(d)(1), 1824(d)(1), and be extended if the Government submits, and the FISC approves, another FISA application. 50 U.S.C. §§ 1805(d)(2), 1824(d)(2).

**B. Use of FISA Information and Role of the Court**

With Attorney General authorization, the information obtained through FISA can be used in a subsequent criminal prosecution. 50 U.S.C. §§ 1806(b), 1825(c). Before this can happen, the Government must provide "notice" to the Court and to the party against which the information is intended to be used. 50 U.S.C. §§ 1806(c), 1825(d). The Government did so in this case. See Notice (Dkt. 24).

After receiving such notice, the aggrieved party may file a motion to suppress arguing that (i) the information was unlawfully obtained; or (ii) the electronic surveillance or physical search was not done in conformity with the FISA order.[6] 50 U.S.C. §§ 1806(e), 1825(f). Upon receipt of this motion, the district court may handle it the way it handles all suppression motions, unless the Attorney General files an "affidavit under oath that disclosure or an adversary hearing would harm the national security of the United States." 50 U.S.C. §§ 1806(f), 1825(g). Here, the Assistant Attorney General for National Security filed an affidavit containing this statement. Eisenberg Decl. at PageID.527.

Because the declaration was filed, the district court must "review in camera and ex parte the application, order, and such other materials relating to the surveillance [or physical search] as may be necessary to determine whether the surveillance [or physical search] of the aggrieved

[6] An "aggrieved person" under FISA is "person who is the target of an electronic surveillance or any other person whose communications or activities were subject to electronic surveillance," 50 U.S.C. § 1801(k), or a "person whose premises, property, information, or material is the target of physical search or any other person whose premises, property, information, or material was subject to physical search." 50 U.S.C. § 1821(2).

person was lawfully authorized and conducted." §§ 1806(f), 1825(g). When conducting this review, the Court is to disclose to the aggrieved person the application, order(s), or other materials related to the surveillance or search "only where such disclosure is necessary to make an accurate determination of the legality of the surveillance [or the physical search]." Id. Disclosure is the exception, not the rule. United States v. Daher, No. 18-20559, 2020 WL 7664789, at *2 (E.D. Mich. Dec. 24, 2020); United States v. Belfield, 692 F.2d 141, 147 (D.C. Cir. 1982). If after the Court's review it determines that the surveillance was lawfully authorized and conducted, the Court must deny the suppression motion "except to the extent that due process requires discovery or disclosure." 50 U.S.C. §§ 1806(g), 1825(h). "Courts have interpreted this to mean that disclosure is limited to that required under Brady v. Maryland, 373 U.S. 83 (1963)." United States v. Mohammad, 339 F. Supp. 3d 724, 737 (N.D. Ohio 2018); see also United States v. Aziz, 228 F. Supp. 3d 363, 370 (M.D. Penn. 2017); United States v. Amawi, 531 F. Supp. 2d832, 837 (N.D. Ohio 2008).

**C. Constitutionality of the Ex Parte Review**

Every federal court that has considered the constitutionality of the ex parte review—including the Sixth Circuit—has found it to be constitutional. See e.g., Damrah, 412 F.3d at 624 ("FISA's requirement that the district court conduct an ex parte, in camera review of FISA materials does not deprive a defendant of due process."); United States v. Stewart, 590 F.3d 93, 126 (2d Cir. 2009) ("[T]he procedures fashioned in FISA are a constitutionally adequate balancing of the individual's Fourth Amendment rights against the nation's need to obtain foreign intelligence information."); El-Mezain, 664 F.3d at 567 ("Numerous courts have held that FISA's in camera and ex parte procedures are adequate and withstand constitutional scrutiny.")

**D. Legality of the FISA Materials in the present case**

Nasser's first two requests—(i) "compel the government to determine if the Attorney General will submit an affidavit attesting that disclosure of FISA applications, orders, and other FISA materials…would harm national security[;]" and (ii) provide a copy of the affidavit—have been met by the Government's response. See Resp. The Government's response contains an affidavit from the Assistant Attorney General for National Security, John A. Eisenberg. Eisenberg Aff. at PageID.526–529 (Dkt. 97-1). Eisenberg's affidavit states that disclosure of the FISA materials would harm the national security of the United States. Id. at PageID.529. Therefore, Nasser's first two requests have been met.

**1. Ex Parte Review of FISA Materials**

Because the of the Assistant Attorney General's declaration, the Court conducted an ex parte, in camera, review of the FISA materials provided by the Government. §§ 1806(f), 1825(g). Thus, Nasser's third request is also satisfied. Nasser Mot. at PageID.223.

Nasser states that in as part of this review, the Court must examine whether the materials:

1. contained information that the "primary purpose" of the surveillance was for foreign intelligence information, not domestic criminal activity;
2. contained "certification that the purpose of the requested surveillance is the gathering of foreign intelligence information and a detailed description of the nature of the information sought[,]" a certification that the information could be not obtained through normal investigative techniques, and whether the surveillance was conducted in accordance with minimization procedures[;]
3. were supported by probable cause;

4. contained statements that "each of the facilities, places, premises, or property at which the electronic surveillance or physical search was directed was; or was about to be owned, used, possessed by, or was in transit to or from [Defendants;]" and
5. "whether the need for secrecy still exists."

Nasser Mot. at PageID.220–221.[7]

Put differently, Nasser asks the Court to determine whether the application(s) contained the proper requirements and whether the orders were properly executed. See Nasser Mot.

As to whether the application(s) contained the proper requirements, after reviewing the materials ex parte and in camera, the Court is satisfied that:

1. Each FISA application was made by a federal officer and approved by the Attorney General as required by 50 U.S.C. §§ 1805(a)(1) and 1824(a)(1);
2. Each FISA application contained facts establishing probable cause to believe that the target of the electronic surveillance, physical search, or both, was at the time an agent of a foreign power as required by 50 U.S.C. §§ 1801(b)(2), 1821(1), 1805(a)(2)(A), 1824(a)(2)(A);

---

[7] Nasser argues that the application must show that the "primary purpose" of the surveillance was to obtain foreign intelligence information, not for domestic criminal activity. Nasser Mot. at PageID.220. As the Government points out, the "primary purpose" language is no longer applicable as Congress amended the FISA statute to require an executive branch official to certify that a "significant purpose" of the requested surveillance is to obtain foreign intelligence information. USA Patriot Act of 2001, Pub. L. No. 107-56, 115 Stat. 272, 291 ("Sections 104(a)(7)(B) and section 303(a)(7)(B) (50 U.S.C. 1804(a)(7)(B) and 1823(a)(7)(B)) of the Foreign Intelligence Surveillance Act of 1978 are each amended by striking 'the purpose' and inserting 'a significant purpose'") (codified as amended at 50 U.S.C. § 1804(a)(6)(B)). Thus, the Court examined whether the significant purpose of the surveillance was to obtain foreign surveillance information.

3. No United States person was determined to be an agent of a foreign power solely upon the basis of activities protected by the First Amendment of the U.S. Constitution in accordance with 50 U.S.C. §§ 1805(a)(2)(A) and 1824(a)(2)(A);
4. Each FISA application made pursuant to 50 U.S.C. § 1804 contained facts establishing probable cause to believe that each of the facilities or places at which the electronic surveillance was directed was being used, or was about to be used, by a foreign power or an agent of a foreign power as required by 50 U.S.C. § 1805(a)(2)(B);
5. Each FISA application made pursuant to 50 U.S.C. § 1823 contained facts establishing probable cause to believe that the premises or property to be searched was or was about to be owned, used, possessed by, or was in transit to or from, an agent of a foreign power or a foreign power as required by 50 U.S.C. § 1824(a)(2)(B);
6. Each FISA application made pursuant to 50 U.S.C. § 1823 contained facts establishing probable cause to believe that the premises or property to be searched contained foreign intelligence information and was owned, used, possessed by, or is in transit to or from a foreign power or agent of a foreign power as required by 50 U.S.C. §§ 1823(a)(3)(B), (C);
7. The minimization procedures incorporated into the FISA application(s) and FISC order(s) met the requirements of 50 U.S.C. §§ 1801(h) or 1821(4)—as required by 50 U.S.C. §§ 1805(a)(3) and 1824(a)(3)—and the government implemented such minimization procedures in conformity with an order of authorization or approval;

8. Each FISA application contained a certification that the information sought through the FISA process could not "reasonably be obtained by normal investigative techniques" as required by 50 U.S.C. §§ 1804(a)(6)(C), 1823(a)(6)(C);
9. Each FISA application contained all the statements and certifications required by 50 U.S.C. §§ 1804 or 1823 in accordance with 50 U.S.C. §§ 1805(a)(4) or 1824(a)(4);
10. No certification in an application for a target who was at the time a United States person was clearly erroneous based on the statement made pursuant to § 1804(a)(7)(E) or § 1823(a)(7)(E), and any other information furnished under § 1804(d) or § 1823(c);
11. A "significant purpose" of the United States' collection pursuant to FISA was to collect foreign intelligence information in accordance with 50 U.S.C. §§ 1804(a)(6)(B) and 1823(a)(6)(B).

Regarding whether the order(s) contained the proper requirements, the Court finds:

1. Each FISC order satisfied the requirements of 50 U.S.C. §§ 1805(c) or 1824(c) regarding specifications and directions of the orders;
2. Each FISC order also satisfied the requirements of 50 U.S.C. §§ 1805(d) or 1824(d) regarding the duration of the order, extension, and assessment of compliance.

Nasser argues that the Court should evaluate whether "the need for secrecy still exists." Nasser Mot. at PageID.221–222. The Court declines to do so. First, Nasser does not cite authority that allows the Court to do so, and the Court is not aware of any. Nasser's citation to <u>United States</u>

v. Warsame, 547 F. Supp. 2d 982, 989 (D. Minn. 2008) does not actually state that the Court has authority or should evaluate whether the need for secrecy still exists. Instead, it discusses the defense's difficult position of arguing that information should be suppressed without seeing the information but ultimately concludes that disclosure is not appropriate because of the "in-depth oversight" of the process by all three branches of government. Id. at 988–989.

Second, as the Government points out, the FISA statute does not contemplate that the Court would second-guess the Government's need for secrecy in determining whether to disclose FISA materials. Resp. at PageID.522–524. As discussed further below, the statute states that FISA materials may only be disclosed in two instances: (i) when the reviewing court is unable to determine the legality so the court may disclose portions of the FISA materials necessary to make the determination and (ii) when disclosure must be permitted as required by due process. 50 U.S.C. §§ 1806(f)–(g), 1825(g)–(h).

The Court finds that the surveillance was lawfully authorized and appropriately conducted so Nasser's third request is satisfied.

**2. Disclosure of Materials**

Finding that the FISA application(s) and order(s) were made as required by the FISA statute, the Court will address Nasser's arguments that all FISA materials must be disclosed because it is "necessary to make an accurate determination of the legality." Nasser Mot. at PageID.223. Nasser argues that the Court should consider whether "any irregularities are reveled [sic], such as whether: the materials evidence a possible misrepresentation of fact; the persons to be surveilled are not clearly identified; or the surveillance records include a significant amount of nonforeign intelligence information, indicating a possible issue with the minimization standard utilized." Id. at PageID.220.

The disclosure of portions of FISA materials to the aggrieved person is only authorized if, after the Court conducts its ex parte, in camera review, "only where such disclosure is necessary to make an accurate determination of the legality of the surveillance [or physical search]." 50 U.S.C. § 1806(f); 1825(g). The legislative history explains that disclosure is only "necessary" where:

> the court's initial review of the application, order, and fruits of the surveillance indicates that the question of legality may be complicated by factors such as indications of possible misrepresentation of fact, vague identification of the persons to be surveilled, or surveillance records which include a significant amount of nonforeign intelligence information, calling into question compliance with the minimization standards contained in the order

United States v. Belfield, 692 F.2d 141, 147 (D.C. Cir. 1982) (punctuation modified) (quoting S. Rep. No. 95-701, 95th Cong., 2d Sess. 64 (1978), U.S. Code Cong. & Admin. News 3973, 4032–33).

The Court's review did not identify any factors that lead to it being necessary to disclose portions of the FISA application(s) and order(s). Therefore, Nasser's fourth request is denied.

**E. Suppression of Materials**

Nasser also asks the Court to "suppress all information unlawfully acquired or surveillance conducted not in conformity with an order of authorization or approval, and suppress any fruits of unlawfully [sic] surveillance or searches." Nasser Mot. at PageID.223.

If the Court determines that the surveillance was not lawfully conducted or authorized, the Court must suppress the evidence. 50 U.S.C. §§ 1806(g), 1825(h). However, if the Court determines that the surveillance was lawfully authorized and conducted, like it did here, the Court must deny the suppression motion "except to the extent that due process requires discovery or disclosure." Id. As stated above, that disclosure is limited to that required under Brady. Mohammad, 339 F. Supp. 3d at 737; Aziz, 228 F. Supp. 3d at 370; Amawi, 531 F. Supp. 2d at 837.

The Court's review has not identified any information that is required by due process to be disclosed. Therefore, the Court denies Nasser's request to suppress.

## II. CONCLUSION

For the reasons stated above, Nasser's motion (Dkt. 39) is denied.

**SO ORDERED.**

Dated: November 9, 2026
Detroit, Michigan

s/Mark A. Goldsmith
MARK A. GOLDSMITH
United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 9, 2026.

s/Joseph Heacox
JOSEPH HEACOX
Case Manager